Per Curiam :
This military pay case was referred to Trial Commissioner Mastín G. White, pursuant to Kule 45, with directions to make findings of fact and recommendations for *514 conclusions of law. The commissioner has done so in a report filed March 5, 1963. The defendant objects to the commissioner’s opinion and recommended conclusion; the plaintiff accepts both the opinion and the conclusion; both parties accept the commissioner’s findings of fact. Briefs have been filed and the court has had the benefit of oral argument. With the exception of one observation in the commissioner’s opinion which is unnecessary to the conclusion he reaches, the court agrees with the opinion, findings, and conclusion of the commissioner, and adopts them (with the indicated modification in the opinion), as supplemented by the next paragraph, as the basis for its judgment in this case.
The defendant admits that so long as the plaintiff was held in the military service for the convenience of the Government he would be entitled to his pay even though his enlistment had expired. The argument against recovery is that plaintiff was no longer held for the Government’s convenience after January 27, 1954. The holding for medical treatment ended on that date and thereafter plaintiff was held for trial on the court-martial charges which had been served on January 22, 1954. Defendant says that in these circumstances the holding for trial by court-martial was not for the Government’s convenience. In our view, however, plaintiff continued as a matter of law to be held for the convenience of the Government after January 27th since during that period the Army held and confined him in connection with the proceedings on the court-martial charges. That holding was as much for the Army’s benefit as the holding of a soldier to await the preparation and service of court-martial charges or to undergo medical treatment. Since plaintiff was thus held for the Army’s convenience his pay and allowances continued until properly forfeited pursuant to the convening authority’s approval of the forfeitures on July 13,1954.
Commissioner White’s opinion, as approved by the court, is as follows:
The plaintiff, who formerly was an enlisted man in the United States Army, asserts in the present action a claim for military pay and allowances with respect to a period during *515 which he was held in confinement by the Army while awaiting a trial before a court-martial, while the trial was in progress, and while the record of the trial was under consideration by the officer who had appointed and convened the court-martial.
The plaintiff enlisted in the Army on March 31, 1950, for a 3-year term of service. The plaintiff’s term of enlistment normally would have expired on March 30, 1953. Because of the Korean conflict, however, the enlistments of persons (such as the plaintiff) whose terms of military service were scheduled to expire between July 1, 1952, and June 30, 1953, were extended for 9 months by Executive Order 10345 (April 17, 1952; 17 F.R. 3477). Pursuant to such extension, the term of the plaintiff’s enlistment would have expired on December 30, 1953, but for the fact that the Department of the Army, by means of a circular (No. 38, May 15, 1952), directed that the periods of military service of persons (such as the plaintiff) whose terms of enlistment, as extended, were scheduled to expire in December 1953 should be adjusted so that such persons would be discharged from the service, or relieved from active duty and transferred to a Reserve component, sometime during the period April 1-15, 1953. Therefore, the plaintiff’s term of enlistment, as extended and as adjusted, was scheduled to expire not later than April 15, 1953.
On April 15,1953, the plaintiff was a prisoner of war in the custody of the enemy. He had arrived in Korea on September 20,1950, for active service in the Korean conflict, and he had served in action during that conflict until he was captured by the enemy on November 5, 1950. The plaintiff remained in the custody of the enemy as a prisoner of war until on or about September 5,1953, when he was turned over to the custody of the Neutral Nations Eepatriation Commission. Thereafter, the plaintiff was returned to the military control of the United States on or about October 21,1953.
Immediately after being returned to the military control of the United States, the plaintiff was hospitalized at the 121st Evacuation Hospital in Korea. After spending a day in that hospital, the plaintiff was transferred by air to the Tokyo Army Hospital in Japan, where he remained for about 18 days. While there, the plaintiff received some medical *516 check-ups and some dental care. Laboratory tests were made which showed the presence of ascaris ova, and an interim diagnosis of ascariasis was made. The plaintiff was given medication for this condition.
From Japan, the plaintiff was transferred by air to the United States. He arrived in Washington, D.C., on November 21,1958, and was assigned to the Medical Holding Detachment (Enlisted) at the Walter Eeed Army Hospital.
Upon arriving at the Walter Eeed Army Hospital on November 21, 1953, the plaintiff was given a medical examination. An admission diagnosis of ascariasis and situational maladjustment was made. The plaintiff remained at the Walter Eeed Army Hospital on that occasion for about 6 hours. He applied for leave, and, by direction of the commanding general of the hospital, he was granted a 30-day period of convalescent leave.
After being granted convalescent leave, the plaintiff went from Washington, D.C., to his home at Big Stone Gap, Wise County, Virginia. The plaintiff’s period of convalescent leave was extended for 14 days by the hospital authorities at the Walter Eeed Army Hospital on December 21,1953; it was further extended for a 10-day period on January 4,1954; and it was further extended for an additional 10-day period on January 14,1954. The first of these extensions was granted by the hospital authorities without any request having been submitted by the plaintiff. The second and third extensions were granted pursuant to requests made by the plaintiff.
During the period of leave referred to in the preceding paragraph, the plaintiff went to a Veterans Administration hospital in J ohnson City, Tennessee, for treatment because of a chest ailment. He remained at that hospital for 4 or 5 days, and then returned to his home.
The plaintiff reported back to the Walter Eeed Army Hospital on January 21,1954. Shortly after his arrival, he was given a general physical examination at the hospital.
On January 22, 1954, which was the day after the plaintiff returned to the Walter Reed Army Hospital from his home in southwestern Virginia, he was served with criminal charges alleging the offenses of aiding the enemy and misconduct as a prisoner of war, in violation of Articles 104 and 105 of the *517 Uniform Code of Military Justice.[1] The plaintiff was placed in confinement on January 22, 1954, to await trial before a court-martial.
Effective January 22, 1954, the Army discontinued the plaintiff’s pay and allowances. The plaintiff received all his pay and allowances for the period up to and including January 21, 1954.
The plaintiff was held in confinement at the Walter Deed Army Hospital until January 27, 1954. On that date, the plaintiff was the subject of consideration by a medical board at the hospital. The board recommended that the plaintiff be returned to full military duty; and the board’s recommendation was approved by the commanding general of the hospital on the same day.
After the board proceedings referred to in the preceding paragraph, the plaintiff was taken to Eort Belvoir, Virginia, where he continued to be held in confinement while awaiting his trial before a court-martial.
The plaintiff was brought to trial at Fort Lesley J. McNair in Washington, D.C., before a general court-martial appointed by the commanding general of the Military District of Washington. At the conclusion of the trial, the plaintiff was convicted of the offenses charged against him, and he was sentenced by the court-martial to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for 10 years. The sentence was adjudged on May 4,1954, and it was approved on July 13,1954, by the commanding general of the Military District of Washington, as the convening authority. The plaintiff’s sentence was subsequently affirmed by a board of review in the Office of The Judge Advocate General of the Army, and by the United States Court of Military Appeals.
The plaintiff was confined under the court-martial conviction and sentence previously mentioned until November 24, 1958, when he was released from confinement.
While in confinement pursuant to the court-martial sentence, the plaintiff submitted to the General Accounting Office a claim for Army pay and allowances with respect to the *518 period after they were discontinued and extending through July 12, 1954 (the date immediately preceding the day on which the sentence of the court-martial was approved by the convening authority). The plaintiff’s claim was disallowed by the General Accounting Office in a letter dated March 3, 1955. The letter of disallowance stated in part as follows:
After your repatriation you were apparently retained in the service through January 21, 1954, for hospitalization and medical treatment under authority of the act of December 12, 1941, 55 Stat. 797, 10 U.S.C. 628a, which expressly authorized pay and allowances for enlisted personnel of the Armed Forces during any periods which they are so retained beyond their terms of enlistment. However, after January 21, 1954, you were not retained under such statute but were in confinement awaiting trial by court-martial. Since you were subsequently convicted, you are not entitled to pay and allowances for the period of such confinement, under the rule set out in 30 Comp. Gen. 449 * * *.
The administrative denial of the plaintiff’s claim for Army pay and allowances relative to the period beginning January 22, 1954 (the date on which the plaintiff was served with charges and placed in confinement to await trial before a court-martial) and extending through July 12, 1954 (the date immediately preceding the day on which the plaintiff’s court-martial sentence was approved by the convening authority) was based on a rule which the Comptroller General announced on May 14, 1951 (30 Comp. Gen. 449) in connection with the claim of another former soldier for pay and allowances. The Comptroller General said in the 1951 opinion (at p. 451) that:
* * * the pay and allowances of an enlisted person whose term of enlistment expires while he is in confinement, awaiting trial by court martial, terminate on the date of the expiration of his term of enlistment unless he is aquitted, in which event pay and allowances accrue until he is discharged. * * *
This rule of the Comptroller General was adopted and applied by the Court of Claims, without discussion, in the case of Moses v. United States, 137 Ct. Cl. 374, 380 (1957).
Apart from the question whether the Comptroller General’s 1951 rule is now sound in view of the more recent judicial and *519 statutory pronouncements that are referred to subsequently in this opinion, it should be noted that the rule actually does not fit the plaintiff’s case. The plaintiff’s case is not that of “an enlisted person whose term of enlistment expires while he is in confinement awaiting trial by court martial.” Instead, the plaintiff’s term of enlistment expired not later than April 15, 1953, which was more than 9 months before the plaintiff’s confinement began under the court-martial charges. Of course, the plaintiff was a prisoner of war in the hands of the enemy when the term of his enlistment expired. However, he was returned to the military control of the United States on October 21, 1953; and thereafter, for a period of 3 months, the plaintiff was retained in the service without being confined or subjected to court-martial charges. That this retention was for the Government’s own purposes seems to be clear. The Government paid the plaintiff his military pay and allowances for all periods up to and including January 21, 1954.
Therefore, this case boils down to the question whether the Government could terminate the plaintiff’s entitlement to military pay and allowances by serving charges on him and placing him in confinement on January 22, 1954, to await a trial before a court-martial. It is my view that this question must be answered in the negative.
In the absence of the issuance of a discharge to the plaintiff by the Army, his status as a soldier was not affected in any way by the expiration of the term of his enlistment, as extended and adjusted, on or about April 15, 1953; and he continued thereafter to be subject in all respects to the rules, discipline, and jurisdiction of the Army. Dickenson v. Davis, 245 F. 2d 317, 319 (10th Cir., 1957), cert. denied 355 U.S. 918. Furthermore, the plaintiff’s status as a soldier was not affected by the fact that (according to the subsequent findings of the court-martial) he had failed to live up to his military obligations. In re Grimley, 137 U.S. 147, 152 (1890). Being a soldier, the plaintiff was entitled to his military pay and allowances. As the Supreme Court has said, “a soldier * * * is entitled to the statutory pay and allowances of his grade and status, however ignoble a soldier he may be.” Bell v. United States, 366 U.S. 393, 401-402 (1961). This entitle *520 ment continues even though he is placed in arrest or confinement for trial on court-martial charges. Walsh v. United States, 43 Ct. Cl. 225, 231-232 (1908).
Of course, a soldier’s entitlement to pay and allowances is subject to forfeiture under the sentence of a court-martial, and the plaintiff’s court-martial sentence included a forfeiture of all pay and allowances. However, the order of the convening authority approving the court-martial sentence expressly stated that “The forfeitures shall apply to pay and allowances becoming due on and after date of this action.” Indeed, the portion of the court-martial sentence relating to the forfeiture of pay and allowances could not lawfully have been applied to pay and allowances accruing before the date of the convening authority’s action, since Article 57(a) of the Uniform Code of Military Justice, which had become effective on May 31, 1951, provided as follows:
(a) Whenever a sentence of a court-martial as lawfully adjudged and approved includes a forfeiture of pay or allowances in addition to confinement not suspended, the forfeiture may apply to pay or allowances becoming due on or after the date such sentence is approved by the convening authority. No forfeiture shall extend to any pay or allowances accrued before such date.[2] [Emphasis supplied.]
For the reasons indicated heretofore in this opinion, I believe that the plaintiff is entitled to recover; and it is my recommendation that a judgment be entered to that effect.
The exact amount of the recovery can be determined in subsequent proceedings under Rule 38 (c).
FINDINGS OF FACT
1. The plaintiff, a resident of Big Stone Gap, Wise County, Virginia, formerly served for several years in the United States Army. His initial service in the Army was for a 2-month period in 1947, at the age of 17. Later, on March 31, 1950, the plaintiff enlisted in the Army for a 3-year term of service, which normally would have expired on March 30, 1953. Because of the Korean conflict, however, the enlist *521 ments of persons (such as the plaintiff) whose terms of military service were scheduled to expire between July 1, 1952, and June 30, 1953, inclusive, were extended for 9 months by Executive Order 10345. Pursuant to such extension, the term of the plaintiff’s enlistment was scheduled to expire on December 30, 1953. On May 15,1952, however, the Department of the Army by Circular No. 38 directed, inter alia, that the periods of military service of persons (such as the plaintiff) whose terms of enlistment, as extended, were scheduled to expire in December 1953 should be adjusted so that such persons would be discharged from the service, or relieved from active duty and transferred to a Reserve component, sometime during the period April 1-15, 1953. Therefore, the plaintiff’s term of enlistment, as extended and as adjusted, was scheduled to expire not later than April 15, 1953.
2. The plaintiff was promoted to private on June 29,1950, to private first class on October 12, 1950, and to corporal (temporary) on May 1, 1953.
3» The plaintiff arrived under military orders at Pusan, Korea, on September 20,1950, for active service in the Korean conflict. He served in action during that conflict until he was captured by the enemy on November 5,1950. The plaintiff remained in captivity as a prisoner of war in the custody of the enemy until on or about September 5,1953, when he was turned over to the custody of the Neutral Nations Repatriation Commission. Thereafter, the plaintiff was returned to the military control of the United States on or about October 21, 1953.
4. The plaintiff’s term of enlistment in the Army, as extended and adjusted, expired while he was in captivity as a prisoner of war in the custody of the enemy.
5. Immediately after being returned to the military control of the United States on or about October 21, 1953, the plaintiff was hospitalized at the 121st Evacuation Hospital in Korea. The plaintiff gave the hospital authorities a medical history which 'indicated that he had been troubled by dysentery, bloody stools, chronic cough, and headache. An interim diagnosis of ascariasis was made at this hospital.
6. (a) The plaintiff was transferred by air to the Tokyo Army Hospital in Japan on October 22, 1953, and he re *522 mained in that hospital for about 18 days. While there, he received some medical check-ups and some dental care. Laboratory tests were made which showed the presence of ascaris ova. An interim diagnosis of ascariasis was made. The plaintiff received some medication for this condition.
(b) During the period while the plaintiff was in Tokyo, he was interrogated extensively by counter-intelligence agents of the United States.
7. From Japan, the plaintiff was transferred by air to the United States. En route to the United States, the plaintiff stopped for 2 days in Hawaii, where he was billeted at the Tripler Army Hospital. He arrived in Washington, D.C., on November 21,1953, and was assigned to the Medical Holding Detachment (Enlisted) at the Walter Eeed Army Hospital.
8. (a) Upon arriving at the Walter Eeed Army Hospital on November 21,1953, the plaintiff was given a medical examination. An admission diagnosis of ascariasis and situational maladjustment was made.
(b) On this occasion, the plaintiff was at the Walter Eeed Army Hospital for about 6 hours. He applied for leave, and, by direction of the commanding general of the hospital, he was granted a 30-day period of convalescent leave.
9. After being granted convalescent leave, the plaintiff went from Washington, D.C., to his home in southwestern Virginia. The plaintiff’s period of convalescent leave was extended for 14 days by the hospital authorities at the Walter Eeed Army Hospital on December 21, 1953; it was further extended for a 10-day period on January 4, 1954; and it was further extended for an additional 10-day period on January 14, 1954. The first of these extensions was granted by the hospital authorities without any request having been submitted by the plaintiff. The second and third extensions were granted pursuant to requests made by the plaintiff.
10. During the period of convalescent leave referred to in findings 8(b) and 9, the plaintiff went to a Veterans Administration hospital in Johnson City, Tennessee, for treatment because of a chest ailment. He remained at that hospital for 4 or 5 days, and then returned to his home in southwestern Virginia.
*523 11. The plaintiff returned to the Walter Eeed Army Hospital from his home in southwestern Virginia on January 21, 1954. Shortly after his return to the hospital, the plaintiff was given a general physical examination at the hospital.
12. (a) On January 22,1954, the plaintiff was served with criminal charges alleging the offenses of aiding the enemy and misconduct as a prisoner of war, in violation of Articles 104 and 105 of the Uniform Code of Military Justice. The plaintiff was placed in confinement on January 22, 1954, to await trial before a court-martial.
(b) The plaintiff was held in confinement at the Walter Eeed Army Hospital until January 27, 1954. On that date, the plaintiff was the subject of consideration by a medical board at the Walter Eeed Army Hospital. The board recommended that the plaintiff be returned to full military duty. The board’s recommendation was approved by the commanding general of the hospital on January 27,1954.
(c) The plaintiff was then taken to Fort Belvoir, Virginia, where he continued to be held in confinement while awaiting his trial before a court-martial.
13. (a) The plaintiff was brought to trial at Fort Lesley J. McNair in Washington, D.C., before a general court-martial appointed by the commanding general of the Military District of Washington. At the conclusion of the trial, the plaintiff was convicted of the offenses charged against him (see finding 12(a)), and he was sentenced by the court-martial to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for 10 years. The sentence was adjudged on May 4,1954.
(b) The plaintiff’s court-martial sentence was approved on July 13, 1954, by the commanding general of the Military District of Washington. The order of approval stated (among other things) that “The forfeitures shall apply to pay and allowances becoming due on and after date of this action.” The commanding general of the Military District of Washington forwarded the record of trial to The Judge Advocate General of the Army for review by a board of review.
(c) The plaintiff’s court-martial sentence was affirmed by a board of review on December 10,1954.
*524 (d) On petition of the plaintiff, his case was reviewed by the United States Court of Military Appeals. In a decision dated September 30,1955, the court affirmed the decision of the board of review.
14. On November 24,1958, the plaintiff was released from confinement under the court-martial conviction and sentence referred to in finding 13.
15. (a) Effective January 22,1954 (the date on which the plaintiff was served with charges and was placed in confinement to await trial before a court-martial), the Army discontinued the plaintiff’s pay and allowances. The plaintiff has not received any pay or allowances from the Army for the period beginning with and continuing after January 22, 1954. However, the plaintiff has received all his pay and allowances for the period up to and including January 21, 1954.
(b) As of January 22,1954, the plaintiff’s monthly rate of pay as a corporal (temporary) was $129.95. In addition, the plaintiff had previously executed a “Class Q” allotment of his quarters allowance in favor of his parents, Van Burén Dickenson and Bessie C. Dickenson, as provided for in 37 U.S.C. 252(h). For the period up to and including January 21, 1954, the “Class Q,” allotment had been honored by the Army through the payment to Van Burén Dickenson and Bessie C. Dickenson of an allotment at the rate of $45 per month.
(c) During the period from March 31, 1950 (the date of the plaintiff’s enlistment) to July 13,1954 (the date on which the plaintiff’s court-martial sentence was approved by the convening authority), the plaintiff contributed more than 50 percent of the support of his parents, Van Burén Dickenson and Bessie C. Dickenson.
16. The plaintiff submitted to the General Accounting Office a claim for Army pay and allowances covering the period from February 1, 1954, through July 12, 1954. The plaintiff’s claim was disallowed by the General Accounting Office in a letter dated March 3,1955. The letter of disallowance stated in part as follows:
After your repatriation you were apparently retained in the service through January 21,1954, for hospitaliza *525 tion. and medical treatment under authority of the act of December 12,1941, 55 Stat. 797,10 U.S.C. 628a, which expressly authorized pay and allowances for enlisted personnel of the Armed Forces during any periods which they are so retained beyond their terms of enlistment. However, after January 21,1954, you were not retained under such statute but were in confinement awaiting trial by court-martial. Since you were subsequently convicted, you are not entitled to pay and allowances for the period of such confinement, under the rule set out in 30 Comp. Gen. 449 * * *.
17. The present action to recover the Army pay and allowances claimed by the plaintiff for the period beginning January 22,1954, and continuing through July 12,1954, was instituted on November 25,1959.
18. The plaintiff is the sole owner of the claim upon which this action is based. No part of such claim has ever been assigned or transferred by the plaintiff.
CONCLUSION OE LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that the plaintiff is entitled to recover. Judgment will be entered to that effect. The amount of recovery will be determined pursuant to Buie 38 (c).
In accordance with the opinion of the court and a memorandum report of the commissioner as to the amount due thereunder, it was ordered on April 10, 1964, that judgment be entered for the plaintiff for $1,323.86.

 These articles now comprise Sections 904 and 905, respectively, of Title 10, United States Code.

 This provision is now incorporated in 10 U.S.C. 857. It will be noted that the provision became effective after the date of the announcement of the Comptroller General’s rule discussed earlier in this opinion.