Henry RHOADES

v.

The UNITED STATES.

No. 344–79C.

United States Court of Claims.

Jan. 13, 1982.

---

Albert L. Becker, Philadelphia, Pa., atty. of record, for plaintiff.

Frank M. Rapoport, Washington, D. C., with whom was Asst. Atty. Gen., J. Paul McGrath, Washington, D. C., for defendant; Major Michael Malone, U. S. Dept. of the Navy, Washington, D. C., of counsel.

Before FRIEDMAN, Chief Judge, and NICHOLS and BENNETT, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge:

In this case the court is asked to determine how long, if at all, the pay and allowances of an enlisted member of the armed forces continue after the expiration date of enlistment, when he is then in confinement, having been convicted and sentenced by court-martial, but that conviction is set aside on appellate review and the member thereafter is retried and reconvicted. His entitlement to pay and allowances up to the date his enlistment expires is unchallenged, and we hold they continue until the date his second court-martial sentence is approved by the convening authority.

I

Plaintiff, Henry Rhoades, enlisted in the United States Marine Corps on September 9, 1967. His 6–year enlistment was to expire on September 8, 1973. On August 2, 1972, however, the military authorities arrested and confined Rhoades for the murder of a fellow Marine. At the time of his arrest and confinement, plaintiff held the rank of Sergeant E–5. A general court-martial on October 28, 1972, convicted Rhoades of unpremeditated murder in violation of Article 118 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918. Rhoades was sentenced to 30 years confinement at hard labor, reduction to the pay grade of E–1, and forfeiture of all pay and allowances. Plaintiff also received a dishonorable discharge. The convening authority approved the judgment and sentence on March 29, 1973.

Rhoades appealed his conviction, and, on November 12, 1973, the United States Navy Court of Military Review (NCMR) overturned the conviction on the ground that the military trial judge erred in refusing to give a requested instruction on the lesser included offense of involuntary manslaughter. The NCMR authorized a rehearing. During his confinement but before the NCMR action, Rhoades' 6-year enlistment contract expired on September 8, 1973.

At the time his conviction was set aside, Rhoades was serving his sentence at the Naval Disciplinary Command at Portsmouth, New Hampshire. He was later returned to Camp LeJeune, North Carolina, to await a rehearing. At that time Rhoades was restored to his previous rank, but remained in confinement.

Rhoades was tried again, and, on March 6, 1974, was convicted of voluntary manslaughter in violation of Article 119 of the UCMJ, 10 U.S.C. § 919. Pursuant to court-martial sentence, Rhoades was sentenced to a bad conduct discharge, 5 years' confinement at hard labor, reduction to the pay grade of E–1, and forfeiture of all pay and allowances. The convening authority approved the judgment and sentence on July 19, 1974. At that time, the convening authority credited Rhoades with time already served from August 2, 1972, until November 12, 1973. On March 18, 1975, the NCMR affirmed the second general court's-martial decision and further credited Rhoades with time served from November 12, 1973, to March 6, 1974. On February 6, 1976, Rhoades was discharged from the Marine Prisoner Unit, Fort Leavenworth, Kansas.

In August 1974, at Fort Leavenworth, Kansas, Rhoades was visited by a representative of the United States Marine Corps Finance Center who told Rhoades that he was entitled to all pay and allowances from November 12, 1973, the date his initial con-

viction was set aside, to July 19, 1974, the date the convening authority approved his second conviction. Previously, Rhoades had received his pay and allowances through September 8, 1973, the date his enlistment contract expired. The representative also said that Rhoades would receive the monies owed him in three installments. Rhoades did, in fact, receive approximately $4,000 which was credited to his inmate account. The Marine Corps Finance Center sought to recoup the alleged overpayment, which it said was made in error. On or about January 13, 1975, a partial recoupment in the amount of $2,100.55 was accomplished. The remainder has not been recovered.

Plaintiff's claim is for pay and allowances allegedly due him from September 8, 1973, the expiration date of his enlistment contract, until July 18, 1974, the day before the convening authority approved his sentence. The United States counterclaims for $1,858.20, the alleged overpayment.

## II

Plaintiff maintains that he was held for the convenience of the government and is, therefore, entitled, under our prior decisions, to receive pay and allowances. *Dickenson v. United States*, 163 Ct.Cl. 512 (1963); *Cowden v. United States*, 220 Ct.Cl. 490, 600 F.2d 1354 (1979). Plaintiff further states that regulations contained in the *Department of Defense Military Pay and Allowances Entitlement Manual* (DODPM) and cited by defendant as controlling are by their own terms inapposite in the instant case. Finally, plaintiff argues that defendant's refusal to pay him his pay and allowances after his enlistment contract expired and before a valid court-martial had sentenced him, violates UCMJ Article 57(a), 10 U.S.C. § 857(a), which prohibits retroactive forfeitures. Defendant, on the other hand, contends that *Dickenson, supra,* and *Cowden, supra,* are distinguishable. To the defendant's way of thinking, plaintiff is not entitled to back pay from September 8, 1973, to November 12, 1973, because he was confined pursuant to a court-martial sentence. From November 12, 1973, the day

plaintiff's first court-martial conviction was set aside, until July 18, 1974, the day before plaintiff's second court-martial conviction was approved by the convening authority, plaintiff was, defendant continues, confined awaiting court-martial trial. Entitlement to pay and allowances under these circumstances is also prohibited. *Moses v. United States,* 137 Ct.Cl. 374 (1951).

*Moses, supra,* represented one of the earliest attempts by this court to grapple with the problem of members' entitlement to pay when held beyond their enlistment pursuant to a court-martial conviction or pending trial by court-martial. In that case, we held that an enlisted member confined awaiting trial by court-martial at the time his enlistment expires is not entitled to receive pay and allowances unless he is subsequently acquitted. 137 Ct.Cl. at 380. Our decision in that case was based upon a prior decision of the Comptroller General, 30 Comp.Gen. 449 (1951).

We later refined our decision in *Moses* and held that when a member is retained in the military service for the convenience of the government, he is entitled to receive his pay and allowances. *Dickenson v. United States,* 163 Ct.Cl. at 514. Because the service member's enlistment in *Dickenson* had expired while he was held captive by the North Koreans and before he was confined to await trial by court-martial, our trial judge, whose opinion we adopted, held that the holding of *Moses* was not applicable. 163 Ct.Cl. at 519.

Defendant relies on DODPM ¶ 10316b(1) and (2) which so far as pertinent it quotes as reading as follows:

b. After Expiration of Term of Service.

(1) Confined Awaiting Trial by Court-Martial When Enlistment Expires. If a member is confined awaiting court-martial trial when his enlistment expires, pay and allowances end on date enlistment expires. If he is acquitted when tried, pay and allowances accrue until he is discharged.

(2) Confined Serving Court-Martial Sentence When Enlistment Expires. If a member is confined serving court-martial

sentence when his enlistment expires, pay and allowances end on date the enlistment expires. They will not accrue again until the date he is restored to a full duty status.

Defendant says Rhoades was not restored to full duty status even when returned to Camp LeJeune, and the record seems to bear this out. Defendant says this regulation overrides *Dickenson* and requires a contrary result in a *Dickenson* situation, *i.e.,* the notion of a man being held "for convenience of the government," floated in *Dickenson*, is no longer applicable.

The difficulty is that the regulation does not by its literal terms apply. Breaking down our analysis to the periods of confinement after enlistment expired, first before, and second after, disapproval of the sentence and return to Camp LeJeune, in the first period, plaintiff was not "awaiting court-martial sentence." He was serving one, but one that was invalid, and in construing this regulation the invalidity cannot be ignored when one is determining the serviceman's pay entitlement. *Cowden v. United States, supra.* As to the second period, though plaintiff was confined awaiting his second court-martial, neither part of the regulation applies because the prerequisite for application, that the enlistment expire, did not occur in that period but in an earlier period. *Cf. Dickenson, supra.* Thus, the expiration of the enlistment not having stopped the pay and allowances, nothing occurred afterwards to trigger the regulation by its own terms, so pay and allowances went on. As to the actual circumstances the DOD has not pronounced a regulation to override *Dickenson* and the "convenience of the government" analysis continues valid. This literal interpretation avoids the validity problem that arises under defendant's more expansive interpretation, whether it would make the regulation contrary to the superior authority of UCMJ Art. 57(a), *supra.* If the expiration of the enlistment does not stop entitlement to pay of its own legal force, then it must be the conviction by the second court-martial that has done so, but to give that conviction this effect is to make it retroactive which Art.

57(a) prohibits. *See Dickenson, supra,* at 520. Whether defendant could by the regulation stop pay and allowances when the enlistment expires after, instead of before, disapproval of the first sentence, and while the service member is awaiting his second trial, is an issue our analysis does not cover and as to which we express no opinion.

Therefore, because we find the cited DODPM regulations to be inapplicable in this case and, further, because plaintiff was held beyond his enlistment "for the convenience of the government," plaintiff is entitled to recover his backpay and allowances. That plaintiff was undeserving is of course not a relevant factor under military law. *Bell v. United States,* 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1960).

### III

As further grounds to support his entitlement to the claimed pay and allowances, plaintiff would have this court adopt the Inspector General's recommendation that Rhoades receive pay and allowances for the period commencing September 8, 1973, and concluding July 18, 1974. In his recommendation, the Inspector General cited to DODPM ¶ 70509b(1) which states:

b. New Trial or Rehearing Ordered.

(1) When an executed court-martial sentence which includes a forfeiture is set aside or disapproved, and a new trial or rehearing is ordered which results in an approved sentence to forfeiture, credit the member with the amount of any forfeiture effected under the first sentence. When an unexecuted court-martial sentence which includes a forfeiture is set aside or disapproved and a rehearing is ordered, the member is entitled to full pay and allowances (subject to other proper deductions) for the period from the convening authority's action on the original sentence until the convening authority's action on the subsequent sentence. Entitlement to pay and allowances thereafter depends on the terms of the new sentence.

As plaintiff's original court-martial sentence was unexecuted, *see* DODPM ¶ 70504, according to the Inspector General, he maintained that Rhoades was entitled to full pay and allowances as provided by ¶ 70509b(1). We do not find it necessary to decide whether this gives added support to plaintiff's arguments, because we hold the grounds already stated to be sufficient without it.

## IV

## CONCLUSION

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted. The dismissal of the counterclaim must occur, but is deferred until the case is ripe for a money judgment. We determine that Rhoades is entitled to receive pay and allowances for the period of September 8, 1973, through July 18, 1974. The cause is remanded to the trial division under Rule 131(c) for determination of the quantum of recovery.