**Norris R. JAGNANDAN, M.D., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 316–88C.**

United States Claims Court.

May 25, 1989.

---

See also 24 M.J. 628.

Louis P. Font, Boston, Mass., for plaintiff.

James M. Kinsella, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant. Captain Melissa Wells–Petry, Office of the Judge Advocate Gen., U.S. Army, of counsel.

## OPINION

NETTESHEIM, Judge.

This case is before the court after argument and supplemental briefing on defendant's motion to dismiss pursuant to RUSCC 12(b)(1) for failure to state a claim within this court's subject matter jurisdiction.

## FACTS

The following facts are drawn from the administrative record. Norris R. Jagnandan, M.D. ("plaintiff"), while a medical student participated in the Armed Forces Health Professions Scholarship Program, which required that upon graduation he serve a four-year commitment on active duty as a member of the United States Army Reserve. Plaintiff was awarded his medical degree on March 31, 1980. On April 9, 1980, plaintiff was ordered to report to active duty beginning on June 18, 1980. Plaintiff was commissioned as a captain in the Army Reserve and served as an active duty Reserve officer in the Army Medical Corps. On May 7, 1981, plaintiff requested an extension of his tour of active duty, which was granted, with the approved period of retention to expire on August 11, 1984, rather than June 15, 1984, the original expiration date. In June 1983 plaintiff was transferred to Fort Gordon, Georgia, where he was serving at the time of his court-martial and conviction.

On November 8–10, 1983, plaintiff was tried before a general court-martial composed of officer members. The court-martial took place at Fort Gordon, Georgia, pursuant to Court–Martial Convening Order No. 65, Headquarters, U.S. Army Signal Center at Fort Gordon, Georgia, dated June 29, 1983, as amended by Court–Martial Convening Order No. 92 for the same headquarters dated November 1, 1983. Court–Martial Convening Order No. 94 further amended Court–Martial Convening Order No. 92. Plaintiff was charged with the following:

Charge I: Violation of the Uniform Code of Military Justice, Article 92 [10 U.S.C. § 892]

Specification: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight D. Eisenhower Army Medical Center, Fort Gordon, Georgia, a permanent party service member assigned to Fort Gordon, Georgia did at Fort Gordon, Georgia, an installation under exclusive military control, on or about 10 August 1983, violate a lawful general regulation, to wit: paragraphs 3a and 3e, U.S. Army Signal Center and

Fort Gordon Regulation 600–9, dated 26 April 1983, by sexually abusing Private E–1 Barbara Ann Mullen, U.S. Army, a soldier in a training status, and by engaging in intimate sexual activity with the said Private E–1 Barbara Ann Mullen, to wit: using his rank and position as a medical doctor to fondle the said Private E–1 Barbara Ann Mullen on the breasts and vagina in a sexual manner, and to engage in fellatio with him for the purpose of his sexual gratification.

Charge II: Violation of the Uniform Code of Military Justice, Article 125 [10 U.S.C. § 925]

Specification: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight D. Eisenhower Army Medical Center, Fort Gordon, Georgia, did, at Fort Gordon, Georgia, an installation under exclusive military control, on or about 10 August 1983, commit sodomy with Private E–1 Barbara Ann Mullen, U.S. Army.

Charge III: Violation of the Uniform Code of Military Justice, Article 133 [10 U.S.C. § 933]

Specification: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight D. Eisenhower Army Medical Center, Fort Gordon, Georgia, did, at Fort Gordon, Georgia, an installation under exclusive military control, on or about 10 August 1983, conduct himself in a manner unbecoming an officer and a gentleman by fondling the breasts and vagina of Private E–1 Barbara Ann Mullen, U.S. Army, who was then a patient of the said Doctor (Captain) Norris R. Jagnandan, and by engaging in sodomy with her.

Additional Charge I: Violation of the Uniform Code of Military Justice, Article 133

Specification: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight David Eisenhower Army Medical Center, Fort Gordon, Georgia, a permanent party service member assigned to Fort Gordon, Georgia, did, at Fort Gordon, Georgia, an installation under exclusive military control, on or about 6 July 1983, unlawfully and

dishonorably conduct himself in a manner unbecoming an officer and a gentleman by asking Private First Class Katherine Klukosky, U.S. Army, a female soldier in a training status, if her hip hurt during sexual intercourse before she was in Basic Training and during sexual intercourse while she was in Basic Training, after the said Private First Class Katherine Klukosky sought his assistance as a doctor for pain that began during Basic Training, said remarks having no rational or direct medical relation to the complaint; and by repeatedly counseling the said Private First Class Katherine Klukosky that she should get pregnant in order to be discharged from the U.S. Army after the said Private First Class Katherine Klukosky repeatedly told him she wanted to remain in the service; and by telling the said Private First Class Katherine Klukosky that in order for her to get promoted she would have to "get really close" to her First Sergeant and Platoon Sergeant because her medical records reflected numerous sick call visits; said questions, counseling and remarks not being required for the performance of the duties of his office.

Additional Charge II: Violation of the Uniform Code of Military Justice, Article 92

Specification 1: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight David Eisenhower Army Medical Center, Fort Gordon, Georgia, did, at Swainsboro, Georgia, near Fort Gordon, Georgia, on or about 11 September 1983, violate a lawful general order, to wit: paragraph one, Headquarters, Dwight David Eisenhower Army Medical Center, Fort Gordon, Georgia, Command Policy Letter—Off Duty Employment, dated 1 February 1983, by unlawfully participating in off-duty employment without first receiving permission from his commander.

Specification 2: In that Doctor (Captain) Norris R. Jagnandan, U.S. Army, Medical Company, Dwight David Eisenhower Army Medical Center, Fort Gordon,

Georgia, having knowledge of a lawful order issued by Brigadier General Robert T. Cutting, to wit: that "you will not be allowed to interview or examine female patients," and "you will practice only in a supervised status, and will not practice medicine on weekends and nights," and "you will engage in no off-duty employment in the community," an order which it was his duty to obey, did, at Swainsboro, Georgia, near Fort Gordon, Georgia, on or about 11 September 1983, fail to obey the same.

Plaintiff pled not guilty to the specifications of Charges I, II, and III and to the charges. In addition, plaintiff pled not guilty to the specification of Additional Charge I and the charge. Plaintiff pled guilty to the specifications of Additional Charge II and the charge.

The general court-martial found plaintiff guilty of the specifications of Charges I, II, and III, as well as the charges; plaintiff was found not guilty of the specification of Additional Charge I and the charge. Plaintiff was sentenced to forfeiture of $1,000 pay per month for seven years, to seven years' confinement at hard labor, and to dismissal from the service. On December 22, 1983, the convening authority approved the sentence imposed by the general court-martial, but suspended execution of that part of the sentence in excess of five years and six months for a period of five years from the date of the action. Plaintiff appealed the findings of the general court-martial and his sentence to the United States Army Court of Military Review (the "ACMR").

On April 5, 1985, the ACMR set aside the findings of guilty to Charges I and II. Plaintiff's sentence was approved insofar as it provided for dismissal from the service, forfeiture of $1,000 pay per month for five years, and two years and six months' confinement at hard labor. *United States v. Jagnandan*, CM 445227 (A.C.M.R. Apr. 5, 1985) (unpubl.). Plaintiff appealed to the United States Court of Military Appeals (the "CMA"), which granted plaintiff's petition for review, and remanded the case, on November 10, 1985, to the ACMR for fur-

ther proceedings. *United States v. Jagnandan*, 21 M.J. 289 (C.M.A.1985).

On August 14, 1985, the Department of the Army, United States Disciplinary Barracks, Fort Leavenworth, Kansas, notified plaintiff of his release from active duty and confinement setting forth the conditions of his reassignment. The release order stated, in pertinent part, as follows:

Effective date of RELAD: 21 AUG 85

Assigned to: Commander, USAR CONTROL GP (STANDBY) RCPAC, 9700 Page Blvd., St. Louis, MO 63132.

Military Service Obligation Date: 11 AUG 84

Additional Instructions: "Pursuant to the provision of the UCMJ, Art 2(1), and Para 11d, Manual for Courts–Martial, 1969 (Revised Edition), Officer could be retained in the service pending final action upon the court-martial charges under which he stands convicted. The fact that he is being released from active duty shall not effect or be construed to effect, constructively or impliedly, any condonation or pardon of the offense or offenses under which he stands convicted or remission, in whole or in part of the sentence adjudged against him therefore. The period of service from which he is being released from AD will be characterized according to the final action upon said sentence." Reassignment orders will be issued upon completion of appellate review. You are not required to report physically to the Control Group but you must keep them informed of your current address at all times. Present address: 1210 Oakdale Rd., Augusta, GA 30904.

Plaintiff's appeals continued and his record was reviewed further.

On June 19, 1986, the ACMR reaffirmed its findings and sentence. *United States v. Jagnandan*, CM 445227 (A.C.M.R. June 19, 1986) (unpubl.). Following this decision, the CMA on February 13, 1987, again remanded the case for the ACMR to determine whether the military judge erred in announcing the appellant's pleas of guilty prior to trial on the merits of the contested

charges. *United States v. Jagnandan,* 23 M.J. 423 (C.M.A.1987).

On remand, the ACMR set aside the findings of guilty for the specification of Charge III and the charge. The findings of Additional Charge II and its specifications were affirmed. A rehearing was ordered on Charge III and its specification and on plaintiff's sentence, but the convening authority found that retrying the case was impracticable. Therefore, on September 22, 1987, the convening authority dismissed Charge III and its specification and reassessed the sentence, upholding only the prospective forfeiture of $1,000 pay per month for six months, the period of time plaintiff had already spent in confinement, and plaintiff's dismissal from the service based upon the charge that remained. The ACMR upheld the convening authority's decision. *United States v. Jagnandan,* CM 445227 (A.C.M.R. Mar. 31, 1988) (unpubl.). The CMA affirmed. *United States v. Jagnandan,* No. 52547 (May 6, 1988) (unpubl.). At the conclusion of plaintiff's military appeals, his conviction stood on the specifications of Additional Charge II and the charge (disobeying orders against off-duty practice and examining female patients). This combined offense could bear the maximum punishment of dismissal, confinement at hard labor for up to two years and total forfeiture of pay and allowances.

On February 22, 1988, plaintiff's application for arrears pay was approved in the amount of $19,800.00. Following deductions of FICA, federal, and state taxes, plaintiff's entitlement was determined to be $13,363.02. The amount paid included the $6,000 of forfeited pay for the period beginning January 1, 1984, through June 30, 1984. Plaintiff was paid for the entire time of his confinement, including the time he served in confinement after expiration of his term of enlistment on active duty.

On September 7, 1988, the sentence as affirmed by the CMA was approved. The Judge Advocate General forwarded his recommendations to the Assistant Secretary of the Army. By general court-martial order dated September 26, 1988, the Secretary ordered that plaintiff cease to be an officer of the United States Army effective October 14, 1988.

## DISCUSSION

Plaintiff contends that he is entitled to active duty pay from his date of release from active duty on August 21, 1985, until October 14, 1988, the date of his dismissal. Defendant maintains that the court lacks subject matter jurisdiction over plaintiff's claim, since plaintiff properly was released from active duty effective August 21, 1985, and has received the entire compensation to which he is entitled under the applicable regulations.

Plaintiff asserts jurisdiction pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982). The Tucker Act provides that a suit may be maintained before this court if the action is "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." As the Supreme Court stated in *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976):

The Tucker Act, of course, is itself only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages. The Court of Claims has recognized that the Act merely confers jurisdiction upon it whenever the substantive right exists. *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605–607, 372 F.2d 1002, 1007–1009 (1967). We therefore must determine whether the two other federal statutes that are invoked by the respondents confer a substantive right to recover money damages from the United States for the period of their allegedly wrongful civil service classifications.

In *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 605, 372 F.2d 1002, 1007 (1967), the court stated, "the allegation must be that the particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." (Citation omitted.) It is for

this court to determine whether plaintiff has asserted any statute or regulation which creates a substantive right of an entitlement to backpay. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980). Plaintiff's request for non-monetary relief must depend upon this entitlement. *United States v. King,* 395 U.S. 1, 5, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). Plaintiff's entitlement cannot be premised upon a discretionary act of the Secretary. *Brown v. United States,* 4 Cl.Ct. 175, 179 (1983).

■ The statutes governing release of a reservist from active duty are 10 U.S.C. §§ 680, 681 (1982). 10 U.S.C. § 680(a) provides, in pertinent part:

(a) Each agreement made under section 679(a) of this title shall provide that the member may not be released from active duty without his consent during the period of the agreement—

. . . .

(2) for any other reason, without an opportunity to be heard by a board of officers before the release, unless he is (A) dismissed or discharged under the sentence of a court-martial. . . .

10 U.S.C. § 681(a) confers discretionary authority on the Secretary to release a reservist from active duty. Section 681(a) provides: "[E]xcept as otherwise provided in this title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty."[1] If section 681 is inapplicable, because, as plaintiff contends, his term of enlistment could not expire while he was in confinement, then 10 U.S.C. § 680(a)(2) provides for involuntary release when a soldier is "dismissed or

discharged under the sentence of a court-martial." In either case plaintiff would be required to demonstrate that these provisions were improperly invoked. Plaintiff's burden would be to demonstrate that the proper procedures were not followed, thereby invalidating his release after his term of enlistment had expired on August 11, 1984. *See Austin v. United States,* 206 Ct.Cl. 719, 724 (court lacks jurisdiction to entertain claim for pay and allowances beyond term of enlistment), *cert. denied,* 423 U.S. 911, 96 S.Ct. 215, 46 L.Ed.2d 140 (1975).

■ Plaintiff cites the *Department of Defense Military Pay and Allowances Entitlement Manual* ¶ 10,318, as setting the parameters of his entitlement:

A Reserve officer whose term of active service expires while confined as a result of court-martial action continues to be entitled to pay and allowances, except when forfeited under an approved sentence of a court-martial or a period of service is terminated by proper orders.

The Army acted in accordance with the regulation by paying plaintiff from the date his enlistment expired on August 11, 1984, until August 21, 1985, the date of his release from active duty.

Defendant argues that even if plaintiff's term of service had not expired at the time of his release from confinement, AR 635–100 ¶ 3–71(b) (Aug. 1, 1952), mandated his release from active duty when his term of confinement ended:

An officer holding a current appointment in the Army National Guard of the United States or United States Army Re-

---

**1.** Plaintiff relies on *Pope v. United States,* 15 Cl.Ct. 218 (1988) (order denying motion to dismiss), as authority for the reviewability of the Secretary's discretionary decision to release him from active duty. *Pope* ruled that although 10 U.S.C. § 1211 (1976), governing reinstatement to active duty, does not mandate reinstatement, active duty status itself mandates pay; therefore, the decision to deny plaintiff active duty status was reviewable as a discretionary decision. *See* 15 Cl.Ct. at 221. This court respectfully disagrees. The Claims Court has jurisdiction to review the discretionary determination of a military component under a money-mandating statute or regulation. That a determina-

tion is discretionary is not the hallmark for review; rather, it is whether the determination is made pursuant to a money-mandating statute. The statute in *Pope* did not mandate the payment of money, so the discretionary determination to deny plaintiff reinstatement was not reviewable by the Claims Court. However, the Federal Circuit in *Woodward v. United States,* 871 F.2d 1068, 1072–73 (Fed.Cir.1989), ruled that 10 U.S.C. § 681(a) is reviewable to the extent that plaintiff alleges a violation of the U.S. Constitution. As discussed in this opinion, plaintiff's due process claims are not of constitutional magnitude.

serve which will not expire upon release from active duty *who is sentenced to dismissal* (commissioned officer) or dishonorable discharge (warrant officer) *and confinement which has been served prior to completion of appellate review will be released from active duty upon completion of confinement.*

(Emphasis added.) Defendant's reading of the regulation is correct, but plaintiff draws from it the additional requirement that the Secretary does not have discretion to release a reservist if an unexpired term of enlistment remains to be served. Plaintiff's position would be well taken if plaintiff's conviction had been invalidated or overturned later in the review process. This was not the case.

The fact that plaintiff was paid for the period during which he remained in confinement after his term of enlistment on active duty had expired has no bearing on whether the Army otherwise could release him from active duty status after his term of enlistment had expired. Additionally, plaintiff's receiving pay under AR 635–100 ¶ 3–71(b) for the period during which he remained in confinement does not give rise to an entitlement to be restored to active duty. It is not illogical for plaintiff to have been paid for the time period beyond that required by his sentence to be forfeited, since his confinement extended beyond the term of an active duty agreement and no release had been effected. However, the Army is not required to pay plaintiff in perpetuity while he seeks to vindicate himself through its appellate procedures. The Army was within its rights to release plaintiff from active duty at the end of his enlistment agreement, pending the outcome of a final decision of plaintiff's case on appellate review.

■ Plaintiff bases his claim on the reversal of the charges against him and the order requiring a new convening authority. The convening authority's action, according to plaintiff, had the effect of reversing and remanding the earlier convening authority's decision, thus removing the impediment to his entitlement to pay. Plaintiff contends that he was retained in the service for the convenience of the Army and that his final dismissal from the Army was not effective until the general court-martial order dated September 26, 1988, discharged him from the service.

Plaintiff cites *Rhoades v. United States,* 229 Ct.Cl. 282, 668 F.2d 1213 (1982), and *Cowden v. United States,* 220 Ct.Cl. 490, 600 F.2d 1354 (1979), as supportive of his claim to entitlement. Plaintiff also argues that *Dickenson v. United States,* 163 Ct.Cl. 512 (1963), is applicable and supports his position that he is entitled to pay since he was retained in the service for the convenience of the Army. *Dickenson* is not on point in that it pertains to a serviceman who was held in confinement for the Army's convenience after his term of enlistment expired in order to conduct court-martial proceedings, not in connection with serving his sentence. The other two cases are distinguishable. *Rhoades* involved a serviceman in the United States Marine Corps who was court-martialed, convicted, and confined for unpremeditated murder. While he was in confinement, his term of enlistment expired. The conviction was appealed and set aside. Plaintiff remained in confinement until he was retried. On retrial the serviceman was again convicted. He sought backpay and allowances from the period of time up until his reconviction. The Court of Claims held that since the first court-martial was invalid and the serviceman was held after expiration of his enlistment, nothing intervened to stop plaintiff's right to pay and allowances. 229 Ct.Cl. at 287, 668 F.2d at 1216. The court concluded that the serviceman was held illegally until his second conviction and, therefore, was entitled to backpay.

In *Cowden* plaintiff was convicted under the Uniform Code of Military Justice of conspiracy to introduce and sell controlled substances. Plaintiff was confined at Fort Leavenworth where he served six months of a four-year sentence before being paroled. During his parole period, the ACMR set aside his general court-martial conviction and ordered a rehearing. No rehearing was held. Thereafter, a court-martial order was issued "dismissing all charges

previously brought against Mr. Cowden and restoring '[a]ll rights, privileges, and property of which the accused has been deprived by virtue of the findings of guilty.'" 220 Ct.Cl. at 492, 600 F.2d at 1355–56. Plaintiff was released from military service on April 13, 1977. Plaintiff's enlistment period had ended on September 7, 1975. Plaintiff claimed entitlement to backpay and allowances for the period after his enlistment expired until he received his final release because he was retained for the convenience of the Army. Applying the applicable pay statute, the Court of Claims held that

> we read the pay statutes to mean that an enlisted man confined after expiration of his term of enlistment is due pay and allowances for that period of confinement, if the original conviction is invalidated and either no new trial occurs, or one does occur and results in acquittal....

220 Ct.Cl. at 499, 600 F.2d at 1359.

Unlike the case at bar, *Rhoades* and *Cowden* involved reversals of prior military review board decisions that had the effect of removing the impediments to pay and allowances. In addition, in neither case was the serviceman released from active duty status, nor was there any change in status. The discretionary authority to release under 10 U.S.C. § 681(a) was not invoked in *Rhoades* or *Cowden* since neither was a reservist. In *Rhoades* the court placed significance on the absence of any intervening action (*e.g.*, a release after expiration of the term of enlistment) to provide the basis for adopting any other than the final release date. 222 Ct.Cl. at 287, 668 F.2d at 1216. In *Cowden* the court ordered that plaintiff's former status be restored retroactively because his original court-martial conviction had been set aside. The charges against Cowden were dismissed, and no rehearing was held. In addition, Cowden was placed on parole after his release from Fort Leavenworth, thereby remaining subject to actual custody of the Army. The convening authorities' actions in this case do not rise to this level. Plaintiff's ultimate conviction, unlike that in *Rhoades,* was not reversed.

Plaintiff's convictions on Charges I–III and Additional Charge I to which he pled not guilty were reversed, but his conviction on the specifications to Additional Charge II and the charge remained. Based on this charge, the new convening authority upheld plaintiff's sentence, as reduced; his dismissal from the service; and a forfeiture of pay and allowances for a six-month period. There was no reversal of the remaining charge or sentence nor a subsequent retrial on it. Instead, plaintiff's conviction on Additional Charge II and his reduced sentence were upheld consistently.

Plaintiff was released from active duty effective August 21, 1985. The release order stated that " '[t]he period of service from which he is being released from AD [active duty] will be characterized according to the final action upon said sentence....' " The effect of the order is clear, as is the teaching of the *Rhoades* and *Cowden* cases. If plaintiff were subsequently vindicated, or found to have been illegally convicted, a finding that he was held in the service for the convenience of the Army may have entitled him to pay and allowances during the period between his release from confinement and active duty up until the time of his discharge from the service on October 14, 1988. However, plaintiff's case does not comport with this scenario.

Plaintiff argues that Army Regulation No. (AR) 630–5, concerning excess leave for a soldier awaiting punitive discharge, is applicable. The court fails to see how this provision has the slightest bearing on this matter. The application of the provision is a discretionary matter:

> "A soldier may be sentenced by court-martial to a dismissal or to receive a punitive discharge. Such a soldier may be directed to take excess leave involuntarily when such discharge or dismissal is unsuspended...."

No rights arise under this regulation until a soldier is placed on excess leave. The regulation provides no foundation for a claim that the Army denied plaintiff due process, *see supra* note 1, or acted arbi-

trarily and capriciously under applicable statutes or regulations in releasing plaintiff from active duty pending the outcome of appellate review. Plaintiff argues that the excess leave regulation allows a soldier 72 hours to request continuance on active duty, whereas AR 135-100 ¶ 3-71(b) does not permit any right to seek reconsideration of a decision to release a serviceman from active duty at the expiration of his period of confinement. As defendant rejoins, the authority for release under this regulation derives from plaintiff's conviction by court-martial and confinement pursuant to a valid sentence.

The Army was not required to take any action other than the action it took. Plaintiff's sentence called for his dismissal from the service. The Army acted in accordance with this mandate. Plaintiff's term of service expired on August 11, 1984. He remained in confinement until August 21, 1985, when he was released from active duty. Plaintiff was provided with pay and allowances for the period of his term in active duty, including the period in confinement after expiration of his active duty. He was also paid for the $1,000 pay per month for the six months forfeited from January 1, 1984, to June 30, 1984, as part of his sentence.

Plaintiff also argues that because 10 U.S.C. § 857(a) bars a forfeiture of pay accrued before the date on which a sentence is approved by the convening authority, plaintiff must be presumed to be serving at the convenience of the Army at least until September 22, 1987, the date on which the convening authority reassessed plaintiff's sentence. Because the Secretary had already released plaintiff from active duty, the exaction could not be carried into effect. Indeed, 10 U.S.C. § 857(a) prompted the Army's refund of the $6,000 forfeiture ordered by a prior convening authority,

since the forfeiture ordered in 1987 was only applicable to unaccrued pay.

Plaintiff in his supplemental brief filed on May 8, 1989, relies on AR 135-91 (Feb. 1, 1984), as authority that plaintiff's release from the service was invalid because he had not fulfilled his service obligation. Plaintiff points to the following paragraphs of the regulation: 1-1, 2-2, 3-3, 3-7j, 3-8, 4-1, and Table 4-1. These provisions do not address the proposition argued by plaintiff. Chapter 1, ¶ 1 is a statement of purpose. Chapter 2, ¶ 2-2 involves the contractual obligations of individuals regarding service on active duty. Chapter 3, ¶ 3-7j sets forth the term of service obligations for individuals participating in the Health Professions Scholarship Program. Similarly, Chapter 3, ¶ 3-8 sets forth obligations of Army Medical Department officers. Chapter 4, ¶ 4-1 provides guidance governing absences from training. Table 4 charts the types of absences and the procedures for excusing absences. Defendant's reply brief filed on May 24, 1989, argues that the "references to AR 135-91 provided no support for his theory." Def's Br. at 1. The court agrees. None of the provisions addresses a situation wherein a valid release or dismissal from the service obligation is effected, nor do they create any entitlements to pay. In fact, the provisions on which plaintiff relies do not address whether time spent in confinement is creditable. The court makes no determination regarding whether the time is creditable, as defendant asserts, but it is plaintiff's obligation to point to applicable regulations. This plaintiff has failed to do.[2] The Army could have required plaintiff to serve additional time on active duty, but this does not require that he be restored to active duty status, nor does it require payment beyond the period for which he served on active duty.

---

**2.** Defendant relies on AR 635-100, ¶ 3-71(b), which gives the Secretary discretion to discharge from active duty those servicemen released from confinement pending the outcome of appellate review. Defendant also cites AR 350-100 ¶ 12(b) (Mar. 1, 1982), and AR 601-141 ¶ 6(b) (June 1, 1982), which indicate that the Army may waive the service obligation of a serviceman, in its discretion, when it is no longer desirable to retain that individual. Defendant's reading of these regulations makes eminent sense, while plaintiff's constructions of other regulations are not supportive of his argument that he is entitled to backpay and reinstatement to active duty.

The Army in this case, unlike the Marine Corps in *Rhoades*, effected a release from active duty after the term of enlistment expired. Since plaintiff's conviction and sentence were upheld partially, the court need not make a retroactive determination whether plaintiff was held for the Army's convenience after August 21, 1985. The release, which is a discretionary act on the part of the Secretary of the Army, and not subject to review, was effective because plaintiff's conviction stood on the specifications of Additional Charge II and the charge. Plaintiff was compensated for the period of time up until his release from active duty. Thereafter, plaintiff had no entitlement to active duty pay. Plaintiff has pointed to no statute or regulation to show that his release from active duty was invalid. Therefore, the court lacks jurisdiction since plaintiff has been fully compensated for the period over which the court could act.

## CONCLUSION

Based on the foregoing reasons, defendant's motion to dismiss is granted. The Clerk of the Court shall dismiss the complaint for want of subject matter jurisdiction.