UNITED STATES, Appellee,

v.

Specialist Four Christopher J. SHY, SSN 447–64–3880, United States Army, Appellant.

CM 439204.

U. S. Army Court of Military Review.

4 Nov. 1980.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Elliot J. Clark, Jr., JAGC, and Captain Charles E. Trant, JAGC, were on the pleadings for appellant.

Colonel R. R. Boller, JAGC, Major Robert B. Williams, JAGC, and Captain John P. Galligan, JAGC, were on the pleadings for appellee.

Before JONES, GARN and LEWIS, JJ.

OPINION OF THE COURT

JONES, Senior Judge:

The appellant was convicted of possessing heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad–conduct discharge, confinement at hard labor for 15 months, forfeiture of $350.00 per month for 15 months, and reduction to Private E–1.

The convening authority approved the sentence. Several assigned errors require discussion in this review pursuant to Article 66, UCMJ, 10 U.S.C. § 866.

I

■ The appellant maintains the court–martial lacked jurisdiction over him because he was retained in the Army beyond his term of service over his objection for the purpose of prosecution. This retention he asserts, "violated the Thirteenth Amendment's proscription of involuntary servitude." We disagree.

■ The Thirteenth Amendment is inapplicable to service in the military. The amendment "was intended to abolish only the well–known forms of slavery and involuntary servitude akin thereto, and not to destroy the power of the Government to compel a citizen to render public service. *Butler v. Perry*, 240 U.S. 328, 332 [36 S.Ct. 258, 259, 60 L.Ed. 672] (1916)." *Selective Draft Law Cases*, 245 U.S. 366, 373, 38 S.Ct. 159, 62 L.Ed. 349 (1918).

Court–Martial jurisdiction over servicemen is based upon Article 2(1), UCMJ, 10 U.S.C. § 802, which provides:

§ 802. Art. 2. Persons subject to this Chapter.

The following persons are subject to [the Uniform Code of Military Justice]:

(1) Members of a regular component of the armed forces, including those awaiting discharge after expiration of their terms of enlistment. . . .

When appellant enlisted on 27 July 1976, he became subject to court–martial jurisdiction and that jurisdiction continued after his enlistment expired until the formalities of discharge were taken. *United States v. Klung*, 3 U.S.C.M.A. 92, 11 C.M.R. 92 (1952).

The rule concerning trial of a serviceman after the expiration of his term of service is presently stated in paragraph 11*d*, Manual for Courts–Martial, United States, 1969 (Revised edition):

d. Effect of termination of term of service.

Jurisdiction having attached by commencement of action with a view to trial–as by apprehension, arrest, confinement, or filing of charges–continues for all purposes at trial, sentence, and punishment. If action is initiated with a view to trial because of an offense committed by an individual before his official discharge–even though the term of enlistment may have expired–he may be retained in the service for trial to be held after his period of service would otherwise have expired.

The purpose of the rule was stated in *United States v. Calley*, 46 C.M.R. 1131 (A.C.M.R.1973):

The reason for the rule is clear and can best be stated negatively. If no such rule existed, enforcement of military law would not be possible as to offenses committed or discovered shortly before one's scheduled date of separation. 46 C.M.R. at 1142.

In the instant case, as charges were preferred on 16 July 1979, ten days prior to the expiration of appellant's enlistment, jurisdiction continued beyond the enlistment for purpose of the trial. *United States v. Hutchins*, 4 M.J. 190 (C.M.A.1978); *United States v. Torres*, 3 M.J. 659 (A.C.M.R.1977).

The appellant complains that a new review and action is needed because the staff judge advocate did not advise the convening authority of this jurisdictional issue, either in his initial review or in a further comment after the defense counsel had submitted his rebuttal to the review. Again we disagree. The staff judge advocate has discretion as to the content of his review and he did not abuse his discretion in ignoring the issue. Similarly, no response was required simply because the defense counsel raised the matter in his rebuttal. The law on this jurisdictional point is too well–settled to merit special comment. *Cf. United States v. Rodriguez*, 9 M.J. 829 (A.C.M.R. 1980).

II

■ The appellant alleged that he was denied his right to a speedy trial as a result

of a 127 day delay between preferral of charges and date of trial. The appellant was under no form of restraint during the period. Therefore, the question of whether his right was violated must be measured under the Sixth Amendment to the Constitution rather than under the more strict Articles 10 and 33, UCMJ, 10 U.S.C. §§ 810, 833, or the even more restrictive, two–faceted, *Burton*\* rule. *United States v. Nelson*, 5 M.J. 189 (C.M.A.1978).

In testing for a Sixth Amendment speedy trial violation, we are guided by the principles laid down by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Among the considerations are the length of the delay and the reasons therefor, the timely assertion of a speedy trial right, and the prejudice to an accused.

As indicated above, the delay was for 127 days, slightly more than the 90–day *Burton* standard but relatively short in comparison to the five year delay in *Barker v. Wingo*, or even the considerably lesser 205 day delay in *Nelson*. The delay was occasioned primarily by the problem in obtaining foreign national witnesses. This will almost always present some difficulty in trials overseas and some delay can reasonably be anticipated.

Appellant was alert to the speedy trial problems and he repeatedly requested the Government to bring his case to trial immediately. Not only did he not waive his right but he put the Government on notice at the outset that he was insisting on compliance with his speedy trial right.

Finally, no prejudice to appellant resulted from the delay in this case. The witnesses were all available and their memories undiminished. No evidence was lost or destroyed. Although appellant was held beyond the expiration of his term of service, this was occasioned by appellant's timing of commission of the offense and not from any design on the part of the Government. Accordingly, we find no violation of appellant's right to a speedy trial. *United States v. Rachels*, 6 M.J. 232 (C.M.A.1979); *United States v. Nelson, supra.*

\* United States v. Burton, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (1971).

## III

The appellant argues that the military judge erred in receiving into evidence the packets of heroin supposedly seized from appellant and a companion because of the failure of the prosecution to prove a complete chain of custody while the substance was in the hands of the German police authorities. The German policeman who apprehended appellant and seized the evidence testified that while observing a group suspected of drug activity he saw appellant reach into his pocket and take out three foil packets which appellant placed on the dashboard of the car in which appellant was sitting; another soldier dropped one foil packet as the police moved in for an apprehension; he seized the four packets, placing the three packets from appellant in one pocket of his coat and the single packet from appellant's companion in another pocket; subsequently at the police station he opened one of the packets and it appeared to be heroin; he marked each of the three foil packets seized from appellant with an "x" and placed them in a large envelope which he sealed and on which he wrote appellant's name; he marked the single packet seized from appellant's companion with an "o" and two "dashes" and placed it in another envelope which he also sealed and on which he entered the name; he normally does not place markings on the packets but he did so in this instance because of the strictness of identification evidence in American courts–martial; and he placed the two large envelopes containing the four packets in a safe at police headquarters. He identified the packets at trial as the ones he had seized.

A German police employee next testified that when she came to work after the weekend she took the two large envelopes out of the safe; she could not remember whether the packets were divided three and one or two and two but she believed the latter; the packets did not appear to be tampered with; she tested one of them and

it appeared to be heroin; and she secured the packets until she turned them over to the military authorities in two envelopes.

The Army criminal investigator who received the packets was emphatic that they were in only one envelope. He was sure, however, that the German civilian employee who turned them over to him had immediately divided them into groupings of three and one, according to the markings on the packets, after he had opened the envelope. There was no contest as to the custody of the packets after they were turned over to the Army criminal investigator or as to their testing at the Army crime laboratory.

Although there was a conflict as to the number of envelopes handed over to the Army criminal investigator and although the prosecution did not present every witness who had access to the evidence safe at the German police office, there was sufficient evidence establishing that the packets seized from appellant were the same packets tested by the Army crime laboratory and found to contain heroin. The heroin, when identified by the two German witnesses through the markings on the packets and the envelopes, ceased to be a fungible substance requiring special accountability. *United States v. Courts*, 9 M.J. 285 (C.M.A. 1980). There was no indication that the packets had been tampered with nor was there any indication of animosity on the part of the German police toward this appellant or American soldiers in general. In short, a proper chain of custody and the absence of tampering was established. *United States v. Courts, supra.*

We are convinced of appellant's guilt of possessing heroin beyond a reasonable doubt. The findings of guilty and the sentence are affirmed.

Judge GARN and Judge LEWIS concur.