UNITED STATES

v.

**David E. FISCHER, Lance Corporal (E–3), U.S. Marine Corps.**

**NMCCA 200200303.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 9 Aug. 2001.

Decided 30 June 2004.

CDR George Reilly, JAGC, USN, Appellate Defense Counsel.

Capt Glen Hines, USMC, Appellate Government Counsel.

RITTER, Senior Judge:

A military judge, sitting as a general court-martial, convicted the appellant, pursuant to his pleas, of two specifications of indecent acts with a child under the age of 16, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The appellant was sentenced to a bad-conduct discharge, confinement for 12 months, and reduction to pay grade E–1.

We have carefully considered the record of trial, the appellant's single assignment of error, and the Government's response. We conclude that the findings and sentence are correct in law and fact, and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

The appellant's pay was terminated pursuant to Department of Defense regulations upon the expiration of his enlistment while he was in pretrial confinement. *See* Department of Defense Financial Management Regulation (DODFMR), Volume 7A, ¶¶ 010302F1c, G3 and G4.[1] At trial, he asserted that he had a statutory right to military pay while in pretrial confinement, even after the expiration of his term of enlistment. *See* 37 U.S.C. § 204(a)(1). On appeal, the appellant contends that the military judge erred by applying this regulation, rather than the statute, in denying his motion for appropriate relief.

### Jurisdiction Regarding Entitlement to Pay

■ As a preliminary matter, the Government contends that this court lacks subject matter jurisdiction over military pay issues. We agree generally with that proposition, but find that we have jurisdiction to decide the underlying issue before us.

The jurisdiction of this court is narrowly proscribed by Congress. *See* Arts. 62, 66, 69, and 73, UCMJ, 10 U.S.C. §§ 862, 866, 869, and 873; *see also Clinton v. Goldsmith*, 526 U.S. 529, 535, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999)(construing similar language in Article 67(c), UCMJ, 10 U.S.C. § 867(c), defining the jurisdiction of our superior court). At issue in this case is our authority under Article 66(c), UCMJ, which provides in part:

> In any case reviewed by it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved.

Were the appellant making a specific request of this court to determine his entitlement to back pay under the administrative regulations, we would be without jurisdiction to act. *Cf. United States v. Webb*, 53 M.J. 702, 703 (Army Ct.Crim.App.2000)(holding that a Court of Criminal Appeals does not have jurisdiction to adjudicate a claim for retired pay). However, the appellant's motion at trial claimed the stoppage of his pay constituted *unlawful pretrial punishment.*[2] Record at 70; Appellate Exhibit XXVII. On appeal, he claims that the military judge erred in denying his motion. Appellant's Brief of 9 Jun 2003 at 3. An evaluation of whether the stoppage of the appellant's pay violated Article 13, UCMJ, 10 U.S.C. § 813, is properly within this court's subject matter jurisdiction. *See generally United States v. Anderson,* 49 M.J. 575 (N.M.Ct.Crim.App.1998)(invalidating brig's procedure of placing all pretrial detainees facing more than five years confinement in maximum custody as a violation of Article 13, UCMJ).

### Illegal Pretrial Punishment

■ Whether a pretrial detainee suffered unlawful punishment is a mixed question of law and fact that qualifies for independent review. *See United States v. Pryor,* 57 M.J. 821, 825 (N.M.Ct.Crim.App.2003), *rev. denied* 59 M.J. 32 (C.A.A.F.2003). The burden of proof is on the appellant to show a violation of Article 13, UCMJ. *See United States v. Mosby,* 56 M.J. 309, 310 (C.A.A.F.2002). Article 13 prohibits two things: (1) the intentional imposition of punishment on an accused before his or her guilt is established at trial, i.e., illegal pretrial punishment, and (2) arrest or pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement. *See United States v. Inong,* 58 M.J. 460, 463 (C.A.A.F.2003).

The "punishment prong" of Article 13 focuses on intent, while the "rigorous circumstances" prong focuses on the conditions of pretrial restraint. *See Pryor,* 57 M.J. at 825 (citing *United States v. McCarthy,* 47 M.J.

---

1. Formerly ¶¶ 030206A3, 030207C, and 030207D.

2. In addition, the appellant asserted his period of unpaid pretrial confinement violated the 13th Amendment to the United States Constitution's prohibition against involuntary servitude. The military judge correctly held that 13th Amendment did not apply to military service. *See United States v. Allen,* 31 M.J. 572, 635 (N.M.C.M.R. 1990); *United States v. Shy,* 10 M.J. 582 (A.C.M.R.1980). The appellant has not advanced that argument on appeal.

162, 165 (C.A.A.F.1997)). As a detainee's pay status is not a condition of the restraint, nor relevant to ensuring presence at trial, the appellant's claim only implicates the punishment prong of Article 13. To determine if the stoppage of the appellant's pay violated the punishment prong of Article 13, we must determine whether this pretrial action was intended to be punishment and whether it furthered a legitimate governmental objective. *See Anderson,* 49 M.J. at 576; *see generally Bell v. Wolfish,* 441 U.S. 520, 538–39, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

1. *There was no intent to punish the appellant.*

■ We find that the military judge's findings of fact on this issue are fully supported by the record, and adopt those findings here. Record at 89; Appellate Exhibit XXXVI. The record is clear, from the appellant's own evidence submitted in support of the motion, that there was no punitive intent behind the stoppage of his pay. To the contrary, when the trial defense counsel first inquired of brig staff about the status of the appellant's pay, the staff indicated that the appellant should have been receiving pay, and that it would be restarted. Only after researching the applicable regulations did the staff inform the trial defense counsel that the appellant could not be paid. We agree with the military judge that the local authorities were merely carrying out the regulation, and not attempting to punish the appellant.

2. *The regulation does not operate as punishment.*

We then turn to the question of whether the DODFMR provisions at issue further a legitimate governmental interest. Three subparagraphs of ¶ 010302 of the DODFMR operate to deny pay to service members in the appellant's situation:

010302. *Unauthorized Absence and Other Lost Time*

. . . .

F. *Military Confinement*

1. *General.* Pay and allowances accrue to a member in military confinement except when:

. . . .

c. The term of enlistment expires. See subparagraph 010302.G below.

G. *Term of Enlistment Expires*

. . . .

3. *Enlistment Expires Before Trial.* An enlisted member retained in the Military Service for the purpose of trial by court-martial is not entitled to pay for any period after expiration of the enlistment unless acquitted or the charges are dismissed, or the member is retained in or restored to a full-duty status.

4. *Confined Awaiting Trial by Court–Martial.* If a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires. If the member is acquitted when tried, pay and allowances accrue until discharge.

By statute, service members on active duty are entitled to the basic pay at the pay grade to which they are assigned. *See* 37 U.S.C. § 204(a)(1). As the appellant correctly points out, nothing in the statute expressly prohibits a service member who has been extended involuntarily to secure court-martial jurisdiction from receiving basic pay. *See Paalan v. United States,* 51 Fed.Cl. 738, 744–745 (2002). However, regulations may supplant the military's liability to pay active-duty service members in certain situations, such as pretrial confinement. *Id.* (citing *Dock v. United States,* 46 F.3d 1083, 1091–92 (Fed.Cir.1995)). Whether the statute "trumps" the regulation, or the regulation is an authorized implementation of statutory authority, is a question outside the proper purview of this court. The appellant may seek relief on this basis, if he chooses, from the Board for Correction of Naval Records under 10 U.S.C. § 1552, and, if he deems necessary, from the United States Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491, or a United States District Court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2). *See Keys v. Cole,* 31 M.J. 228, 234 (C.M.A.1990); *United States v. Webb,* 53 M.J. at 704.

For our purposes, it is sufficient to evaluate the **purpose** of the applicable DODFMR

provisions, which is evident from the text and the overall goal of ¶ 010302. The military, like any other executive branch agency, has a duty to spend its financial resources wisely. This regulation denies payment to those service members who do not continue to serve in a **full duty** status and provide productive service in furtherance of the military mission, whether it is because they have commenced an unauthorized absence, incapacitated themselves as a result of certain diseases, or are being held in pretrial confinement past the end of their active obligated service pending trial by court-martial. We find this to be a legitimate governmental interest, not punitive in nature, and that the military judge properly denied the appellant's motion for appropriate relief under Article 13, UCMJ. The appellant's assignment of error is without merit.

### Conclusion

We therefore affirm the findings and sentence, as approved by the convening authority.

Chief Judge DORMAN, Senior Judge CARVER, Senior Judge PRICE, Judge SUSZAN, and Judge REDCLIFF concur.

VILLEMEZ, Judge (dissenting):

Numerius, the governor of Narbonensis, was on trial before the Emperor [Julian], and contrary to the usage in criminal cases, the trial was public. Numerius contented himself with denying his guilt, and there was not sufficient proof against him. His adversary, Delphidius, "a passionate man," seeing that the failure of the accusation was inevitable, could not restrain himself, and exclaimed, "Oh, illustrious Caesar! If it is sufficient to deny, what hereafter will become of the guilty?" to which Julian replied, "If it suffices to accuse, what will become of the innocent?" Rerum Gestarum, L.XVIII, c. 1.

*Coffin v. U.S.*, 156 U.S. 432, 455, 15 S.Ct. 394, 39 L.Ed. 481 (1895).

This case and its proper judicial resolution revolve around three seemingly simple, fundamental concepts and principles: the jurisdiction of this court to consider the appellant's plea of error, the appellant's military status, and—most basic of all to our criminal justice system in this country, both in and out of the military services—the almost-sacred principle of the presumption of innocence. I respectfully disagree with the way the majority of this court has chosen to apply these concepts to the facts and circumstances of this case. I believe that the appellant is entitled to appropriate relief, because the termination of his statutorily-based military pay, merely because he was in **pretrial** confinement beyond his original "term of enlistment" upon the expiration of his tour of active service (EAS), violates Article 13, UCMJ, which prohibits the pretrial "*punishment* or *penalty* other than arrest or confinement. . . ." (Emphasis added).

### Jurisdiction

Under the duties and responsibilities given us by Article 66(c), UCMJ, this court may only "affirm such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved." In *Burns v. Wilson*, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953), the Supreme Court states: "The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from the violation of his constitutional rights." While in *United States v. Tardif*, 57 M.J. 219, 223 (C.A.A.F. 2002), our senior court concludes: "Our Court has consistently recognized the broad power of the Courts of Criminal Appeals to protect an accused. We have consistently recognized that the charter of Courts of Criminal Appeals on sentence review is to 'do justice.'" (Internal citations omitted). Thus, as the Supreme Court observes in *Estep v. United States*, 327 U.S. 114, 120, 66 S.Ct. 423, 90 L.Ed. 567 (1946): "Judicial review may indeed be required by the Constitution." (Citation omitted).

In *Ex parte Young, 209 U.S. 123,* 143, 28 S.Ct. 441, 52 L.Ed. 714 (1908)(quoting *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821)), the Supreme Court reasons:

"It is most true that this court will not take jurisdiction if it should not; but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the

legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever doubts, with whatever difficulties, a case may be attended, we must decide it, if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty."

See also Dombrowski v. Pfister, 380 U.S. 479, 483–84, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

The majority opinion in this case correctly establishes the jurisdiction of this court to review and rule on the trial judge's denial of the appellant's court-martial motion claiming the stoppage of his pay constituted *unlawful punishment* applied pretrial, in violation of Article 13, UCMJ. I disagree, however, with the general conclusion reached in the majority opinion that it is beyond this court's proper purview to determine whether the statute establishing a servicemember's pay "trumps" the Department of Defense Financial Management Regulation (DODFMR) at Volume 7a, ¶ 030207, or if that DODRMR provision cutting off the pay of a post-EAS pretrial confinee is an authorized implementation of statutory authority. I do not believe that answering that statutory-construction question is necessary *per se* in this case, because the clear effect of the questioned DODFMR provision is the creation, pretrial, of an *illegal* or, at the very least, an *improper punishment* condition. If in different circumstances the resolution of that question becomes necessary in determining whether an appellant had been subjected to an action with adverse constitutional-rights implications, this court

does have the authority to make that determination, simply in the context of remedying the adverse impact on an appellant.[1] Such is not the case herein, however, as the questioned DODFMR provision implodes under the excessive weight of its own internal illogicalness.

### Military Status

There is no issue with a servicemember being retained beyond his or her EAS for the purpose of facing a court-martial for an offense or offenses alleged to have occurred before the expiration of his or her active-duty enlistment period.[2] To borrow a phrase, when done correctly it is an "altogether fitting and proper" procedure by which to ensure the integrity of the military justice system. What "legally" happens when this is done is that the suspected or accused servicemember is *involuntarily extended* on active duty, never actually being permitted to separate or leave active-duty, despite the passing of his EAS or contractual end-of-enlistment date. This is a permissible action, because enlistment in the military—while a contract—is much more in context and effect than a normal commercial contract. It creates a *status* that is not affected by a breach of that contract.

The Supreme Court long ago established the principle that entry into military service effects a definite and discernible change of status, when it concluded:

> Enlistment is a contract; but it is one of those contracts which changes the status; and, where, that is changed, no breach of the contract destroys the new status or relieves from the obligations which its existence imposes.
>
> . . . .
>
> By enlistment the citizen becomes a soldier. His relations to the State and the public are changed. He acquires a new

---

**1.** In regards to the issue or potential issue of "the interplay between pay mandating (or limiting) statutes and pay administrating regulations," the appellant notes and develops the point that when Congress grew concerned about some military members continuing to receive active duty pay and allowances while serving extended periods of post-trial confinement, statutory action and not mere regulatory action was taken to effect a change. Appellant's Brief of 9 Jun 2003 at 8–10.

**2.** For guidance on extending a servicemember beyond his or her EAS, *see* MILPERSMAN, art. 1160–050. *See also* Department of Defense (DOD) Directive 5154.29: DOD Pay and Allowances Policy and Procedures; and DOD Financial Management Regulation, DOD 7000.14–R, Volume 7A, Military Pay Policy and Procedures—Active Duty and Reserve Pay.

status, with correlative rights and duties; and although he may violate his contract obligations, his status as a soldier is unchanged.

*In re Grimley,* 137 U.S. 147, 151–52, 11 S.Ct. 54, 34 L.Ed. 636 (1890). Just as clearly established is the principle that the military status of a servicemember does not terminate by the mere appearance of a specific date on the calendar, and it certainly does not end automatically at a servicemember's EAS.

Thus, the individual, despite the passing of his or her original "contractual" discharge date, remains on active duty and subject to *in personam* jurisdiction, *until* properly separated. Providing guidance on this issue, our senior court in *United States v. Melanson,* 53 M.J. 1, 2 (C.A.A.F.2000), held that military jurisdiction terminates *only* upon the delivery of a valid discharge certificate, a final accounting of pay, and completion of the clearing process required under the appropriate service regulations to separate one from the military service.[3] The Court of Appeals for the Armed Forces, then the Court of Military Appeals, in *United States v. Poole,* 30 M.J. 149, 151 (C.M.A.1990) stated:

> [D]espite any prior intimation to the contrary, ... we now hold that jurisdiction to court-martial a servicemember exists despite delay—even unreasonable delay—by the Government in discharging that person at the end of an enlistment and that no "constructive discharge" results when a servicemember is retained on duty beyond the end of an enlistment.

(Internal citation omitted). *See also United States v. Williams,* 53 M.J. 316, 317 (C.A.A.F.2000); *United States v. King,* 42 M.J. 79, 80 (C.A.A.F.1995); *United States v. Batchelder,* 41 M.J. 337 (C.A.A.F.1994); *United States v. King,* 27 M.J. 327, 329 (C.M.A.1989); *United States v. Howard,* 20 M.J. 353 (C.M.A.1985); *United States v. Wheeley,* 6 M.J. 220 (C.M.A.1979).

In the case of *Dickenson v. Davis,* 245 F.2d 317, 319 (10th Cir.1957), *cert. denied,* 355 U.S. 918, 78 S.Ct. 349, 2 L.Ed.2d 278 (1958), the U.S. Court of Appeals for the Tenth Circuit states: "Service in the military, whether by enlistment or otherwise, creates a status which is not and cannot be severed by breach of contract unfortified by a proper authoritative action." Thus, the question is whether in this case, the "breach of contract" has been fortified, or not, "by a proper authoritative action." *Id.*

### Entitlement to Pay

In his Brief, the appellant does an excellent job in establishing and explaining the statutory basis for a servicemember's entitlement to pay. All of which basically boils down to the fact that a servicemember is entitled to a base pay calculated on his or her pay grade and time in service. With certain well-established exceptions—such as the withholding of forfeitures properly awarded at a disciplinary proceeding—the individual continues to be so entitled to his or her pay *until properly discharged,* as noted above, and that is based solely on his or her status as an active-duty servicemember, *not* on the type or quality of his or her actual performance of duty.

In *Bell v. United States,* 366 U.S. 393, 401–02, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961), the Supreme Court states:

> A soldier's entitlement to pay is dependent upon statutory right. In the Armed Force, as everywhere else, there are good men and rascals, courageous men and cowards, honest men and cheats. If a soldier's conduct falls below a specified level he is subject to discipline, and his punishment may include the forfeiture of future but not of accrued pay. But a soldier who has not received such a punishment from a duly constituted court-martial is entitled to the statutory pay and allowances of his grade

---

3. A DD 214 is an individual's discharge certification, and the most common type of proof of military service. It has been issued to veterans discharged from all branches of the military service since 1950. In addition to personal information, such as one's name, social security number, and date of birth, it includes all relevant service dates, such as entry and separation dates. Among other things, it also lists net active service time, branch of service, type of discharge received, and any time lost due, for instance, to periods of unauthorized absence. *See* http://www.valaro.com/lgy/coe/id49_m.htm.

and status, however ignoble a soldier he may be.

(Footnotes omitted). In *Bell*, the Supreme Court quotes affirmatively from an almost–100–year–old opinion of the Attorney General:

> "In the naval, as in the military service, the right to compensation does not depend upon, nor is it controlled by, 'general principles of law'; [sic] it rests upon, and is governed by, certain statutory provisions or regulations made in pursuance thereof, which specially apply to such service. These fix the pay to which officers and men belonging to the Navy are entitled; and the rule to be deduced therefrom is that both officers and men become entitled to the pay thus fixed so long as they remain in the Navy, whether they *actually* perform service or not, unless their right thereto is forfeited or lost in some one of the modes prescribed in the provisions or regulations adverted to." 15 Op. Atty. Gen. 175, 176.

*Bell v. United States*, 366 U.S. at 403–04, 81 S.Ct. 1230. The "modes prescribed in the provisions or regulations" referred to above as proper and legitimate methods to take away a servicemember's entitled pay seem to be such things as the withholding of pay forfeited by a court-martial sentence, or pay for days during which the individual was absent without proper authority from his or her unit.[4] That the post-EAS-pay regulation might be included in that group will be addressed below.

### Post–EAS–Entitlement to Pay

In *Dickenson v. United States*, 163 Ct.Cl. 512, 519, 1963 WL 8493 (1963), the Court of Claims found that: "In the absence of the issuance of a discharge to the plaintiff by the Army, his status as a soldier was not affected in any way by the expiration of the term of his enlistment...." That court went on to conclude that the servicemember's entitlement to the statutory pay and allowances of his grade and status *"continues even though*

*he is placed in arrest or confinement for trial on court-martial charges." Id.* at 520–21 (emphasis added). The pivotal point for the court—the lynchpin of its decision—was the fact that the plaintiff was held in the military service beyond his EAS for the *convenience of the Government*, which, thus, entitled him to his pay, despite the expiration of his contracted enlistment. *Id.* at 514.

In this case, almost by definition, the appellant also was extended on active duty for the convenience of the Government; for I do not believe anyone would argue it was for the appellant's *convenience*. Likewise, there is no debate that the appellant, when extended on active duty to face disciplinary action, continued to be entitled to his statutory-based pay, as determined by his pay grade and number of years of service in the Marine Corps. The only real issue is whether the passing of the appellant's now-eviscerated EAS date served to legitimately end his total pay entitlement, *solely* due to his residence in pretrial confinement. The majority concludes with a "Yes," while I reason "**NO**" to be the correct answer.

### Prohibited Pretrial Punishment

Article 13, UCMJ:

> No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances required to insure his presence, but he may be subjected to minor punishment during that period for infractions of discipline.

The confiscation of the appellant's entire pay entitlement, due solely to his post-EAS pretrial confinement, violates the provisions of Article 13, UCMJ, **both** as an improper *punishment* and as an improper *penalty*, which is defined as a "[p]unishment imposed on a wrongdoer, esp[ecially] in the form of imprisonment or fine."[5]

---

4. *See generally Bell v. United States*, 366 U.S. 393, 81 S.Ct. 1230, 6 L.Ed.2d 365 (1961); *Cowden v. United States*, 220 Ct.Cl. 490, 600 F.2d 1354 (1979); *Dickenson v. United States*, 163

Ct.Cl. 512 (1963); and *Walsh v. United States*, 43 Ct.Cl. 225, 1907 WL 842 (1908).

5. BLACK'S LAW DICTIONARY 1153 (7th ed.1999).

The majority opinion focuses on its conclusion that only one of the two prongs of the illegal pretrial punishment prohibition of Article 13—the "punishment" prong—applies in this case. Before addressing that prong, I wonder why it cannot additionally be argued that the second prong, as it relates to pretrial confinement conditions that are more rigorous than necessary to ensure an accused's presence at trial, is applicable to this case as well? Certainly taking away all of a pretrial confinee's pay is a condition more rigorous than necessary to ensure his or her presence at trial. Is not locking up the individual sufficient to ensure presence at trial, for money would only aid in his possible absence from trial if he were free to move about as desired?

Addressing the perhaps more cogent aspect of the issue, the majority opinion looks at the "punishment prong" of the Article 13 prohibition too literally and technically. Perhaps, as Albert Einstein said: "This is too difficult for a mathematician. It takes a philosopher."[6] As the Court of Claims reasons in *Cowden v. United States,* 220 Ct.Cl. 490, 499, 600 F.2d 1354, 1359 (1979): "Retention without pay is a kind of punishment. Such was not the intent of Congress in enacting the military pay statutes or the Uniform Code of Military Justice."

The majority opinion in this case centers on the vanilla intent of the brig personnel and local authorities in merely carrying out the mandate of the relevant regulation in cutting off the appellant's pay at his EAS, solely due to his being held in pretrial confinement. The string, however, must further be pulled. The just-following-orders explanation is but a deflection, not a "defense," in this case, as the Government is the Government. If the trail leads back to an unconstitutional effect resulting from the implementation of the questioned regulation, such must surely override the purest of intentions.

The majority opinion narrows the consideration to the "punishment prong" of Article 13, UCMJ, and, to support its conclusion that

**6.** Professor Einstein was referring to the preparation of his income tax return. *See* Albert Einstein, Fort Liberty: *Using the First Amendment to Protect the Second* (visited 22 Jun 2004)

there was no requisite intent to punish the appellant, affirmatively cites both *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) and *United States v. Anderson,* 49 M.J. 575 (N.M.Ct.Crim.App. 1998), concluding both that in the appellant's case there was no specific intent by local authorities to punish the appellant and that the questioned regulation serves to further a legitimate governmental interest. Concerning the first aspect, the majority opinion holds that the local authorities were merely carrying out the regulation, with no personal intent to "punish" the appellant. Regarding the latter factor, the majority opinion finds that, as a pretrial confinee past his EAS, the appellant was not serving in the "full-duty status" required by the regulation for one past his or her original EAS to be continued to be entitled to his or her statutorily-based pay.

As mentioned, the majority opinion herein looks to this court's prior opinion in *Anderson* for guidance in considering the issue of pretrial punishment. I would urge a closer reading of *Anderson,* especially footnote 2 at page 577, where this court, in considering the "intent" factor, states: "Although we don't suggest that this was the intention of the policy, we are also concerned about the policy's coercive effect on pretrial confinees. It places considerable pressure on them...."

Additionally, as also mentioned above, the majority opinion cites *Bell v. Wolfish.* In that case, the Supreme Court concludes:

Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.[7]

<http://www.fortliberty.org/quotes/quotes-taxes.shtml>.

**7.** "Qua: in the capacity of...." BLACK'S LAW DICTIONARY 1252 (7th ed.1999).

*Bell,* 441 U.S. at 539, 99 S.Ct. 1861, (internal citation and footnote omitted). *See also United States v. McCarthy,* 47 M.J. 162, 165 (C.A.A.F.1997) and *United States v. James,* 28 M.J. 214 (C.M.A.1989).

In providing this guidance, in *Bell,* 441 U.S. at 537, 99 S.Ct. 1861, the Supreme Court was borrowing from its prior decision in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), where the Court had previously reasoned:

> The punitive nature of the sanction here is evident under the tests traditionally applied to determine whether an Act of Congress is penal or regulatory in character, even though in other cases this problem has been extremely difficult and elusive of solution. Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions. Absent conclusive evidence of congressional intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face. Here, although we are convinced that application of these criteria to the face of the statutes supports the conclusion that they are punitive, a detailed examination along such lines is unnecessary, because the objective manifestations of congressional purpose indicate conclusively that the provisions in question can only be interpreted as punitive.

(Internal citations and footnotes omitted).

When we consider the facts of this case alongside these criteria, we may only conclude that the effect of the no-post-EAS-pay-for-pretrial-detainees regulation is clearly *pretrial punishment* and a violation of basic due process. First, the forfeiture of one's entire pay and allowances is and "has traditionally been regarded as a punishment." Second, it is automatic at the arrival of the pretrial detainee's original EAS, a date already neutered by the individual having been involuntarily extended on active duty for the convenience of the Government, so that he or she might be processed for disciplinary action. Thus, it is automatic, taking effect prior to any guilt-determinative judicial action, and not coming "into play only on a finding of *scienter.*" Third, the deprivation of income due to an artificial status being placed on a pretrial detainee does not "promote the traditional aims of punishment—retribution and deterrence." Fourth, the "behavior to which it applies"—merely being in pretrial confinement after one's now-meaningless EAS—is not "already a crime." Fifth, there is no "alternative purpose to which it may rationally be connected...." *Kennedy,* 372 U.S. at 168–69, 83 S.Ct. 554. And, if I may be so very presumptuous as to offer a sixth factor: It just does not appear to be "fundamentally fair."

### Presumption of Innocence

In tracing the history of the principle of the "presumption of innocence," in *Coffin v. United States,* 156 U.S. 432, 453–56, 15 S.Ct. 394, 39 L.Ed. 481 (1895), the Supreme Court offers, as the starting point for its lengthy historical review of the principle: "Greenleaf traces this presumption to Deuteronomy, and quotes Mascardus De Probationibus to show that it was substantially embodied in the laws of Sparta and Athens." *Id.* at 454, 15 S.Ct. 394. In focusing on this country's application of the concept, the Court states: "The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Id.* at 453, 15 S.Ct. 394.

Thus, the "presumption of innocence" is such an accepted and basic principle in our judicial system in this country that little needs to be said about it as it applies to this case, except to offer a clarification of the Supreme Court's pronouncement concerning the concept in *Bell,* which has been affirmatively cited by both the majority opinion in

this case and in this dissent above. In *Bell,* the Court, after reviewing the questioned physical conditions involved in a particular, challenged pretrial confinement circumstance, which had been attacked, in part, as a violation of the presumption of innocence, concludes that the principle "has no application to a determination of a pretrial detainee during confinement before his trial has even begun." *Bell,* 441 U.S. at 533, 99 S.Ct. 1861.

The nature of the due-process violation is decidedly different in this case, to the point that, I believe, the presumption of innocence does have an "application" to this case and the adverse affects on the appellant of the questioned, pay-depriving regulation. In *Bell,* physical conditions of the questioned pretrial confinement were being challenged. As noted above, the Court held that the issue is whether the challenged condition of pretrial confinement was, in fact, punishment—and, thus, improper—or whether it is "reasonably related to a legitimate governmental objective...." *Id.* at 539, 99 S.Ct. 1861. In this case, we are not considering a physical condition of the appellant's pretrial confinement, such as the sleeping arrangements of detainees, which was the genesis of the challenge in *Bell,* along with other conditions of confinement and management practices. In this case, we are examining the validity of the adverse impact of a condition separate from, but superimposed on the appellant's pretrial confinement, to the extent that it becomes improper "punishment" in violation of Article 13, UCMJ, in that it is not "reasonably related to a legitimate governmental objective." *Id.*

### Legitimate Governmental Objective

To completely cut off one's statutory pay entitlement, due solely to being in pretrial confinement, after the individual's now-rendered-meaningless original EAS, serves no legitimate governmental objective. To say that the individual is no longer in the "full-duty" status required by the questioned regulation to entitle one to his or her statutory pay and allowances, because a now-meaningless date passes, is artificial and appears to be without sound logic. As discussed above, the pretrial detainee's original EAS is meaningless, because the Government, for its

convenience, **involuntarily** extended him or her on active duty—thus rendering his EAS date a nullity—for the purpose of facing disciplinary proceedings. No one debates the continued entitlement of the individual to his or her statutory pay after being so extended on active duty. No one even questions the individual's continued pay entitlement after being placed in pretrial confinement. However, all supposedly changes when the individual's now-meaningless EAS pops up on the calendar.

I believe this to be a problem, because: (a) there is no meaningful change in the individual's *status* at his or her original EAS, and (b) he or she is being hit with improper disparate—and perhaps harsh—treatment for no valid reason. The individual, extended on active duty past his or her original, now-meaningless EAS date, is in the location and "fully" performing the "duty" assigned to him or her, which are exactly the same as the day before, when he or she was still entitled to pay. Additionally, the now-pay-deprived individual is in the same place doing the same duties as the still-being-paid pre-EAS pretrial detainee in the next cell. And the logic and justification for this disparate treatment is what? And the real difference between the two? Perhaps it lies in one being "smarter" then the other, in that he or she had the "foresight" to commit his or her alleged offense earlier in his or her enlistment?

### Improper Adverse Consequences

Before ending this consideration with a list of adverse consequences that render this questioned regulation a violation of the appellant's due-process rights, the counterpoint is made that a civilian does not get paid by the state for being in pretrial confinement. While that is a true statement as far as it goes, it does not apply to the facts of this case. For a servicemember the Government is his or her employer. If a salaried civilian employee is placed in pretrial confinement, he or she is entitled to a bail hearing and normally *would* continue to receive his or her salary, until actually fired for an inability to come to work. For a servicemember in the appellant's circumstances, the "firing" and end of employment—and logical end of one's

pay entitlement—comes only with the awarding of a punitive discharge at the *conclusion* of the court-martial proceedings.

The following adverse consequences of the questioned pay-depriving regulation render it an improper pretrial punishment in violation of Article 13, UCMJ, and a violation of the appellant's right to the due process of law:

—The questioned regulation is arbitrary and capricious, in that it artificially and automatically imposes a total forfeiture of statutorily-based pay and allowances, without any meaningful change in status; and as such, it is not reasonably-related to a legitimate governmental objective; forfeitures may only be imposed as part of a legitimately awarded sentence;

—It violates the basic principle of the presumption of innocence, and is not "saved" by the provision that returns all of the pretrial money so withheld upon an acquittal at court-martial; as likely hardship created by this artificially-imposed forfeiture of all pay and allowances may not be capable of repair, such as: adverse consequences and hardships for the appellant's family, the repossession of the appellant's property for inability to meet payment schedules; inability to hire, if desired, civilian counsel for court-martial representation;[8]

—The potential to place improper pressure on the appellant to plead guilty and accept a pretrial agreement, in order to sooner extricate himself from a no-pay situation; and

—By removing the potential punishment of forfeitures at the appellant's court-martial, increasing the likelihood that more confinement might be awarded to "compensate" for the inability to award forfeitures.

For all these reasons and those discussed above, the questioned regulation must implode from the excess weight of its own illogicalness. While its intent might be admirable—saving the Government money—its effect is to impose an impermissible form of pretrial punishment or penalty on the appel-

lant, in violation of Article 13, UCMJ. Thus, the appellant is entitled to appropriate relief, since the impressing of seaman fell out of favor in this country some time ago.

Judge HARRIS concurs.

---

8. While representation by a civilian defense counsel is not a guaranteed right, it is an important personal option that does much to protect the integrity of the military justice system in the eyes of the general public.