UNITED STATES, Appellee

v.

David E. FISCHER, Lance Corporal
U.S. Marine Corps, Appellant

No. 04-0756

Crim. App. No. 200200303

United States Court of Appeals for the Armed Forces

Argued May 3, 2005

Decided September 2, 2005

EFFRON, J., delivered the opinion of the Court, in which
CRAWFORD and BAKER, JJ., joined.  ERDMANN, J., filed a
dissenting opinion, in which GIERKE, C.J., joined.


Counsel


For Appellant:  Lieutenant Brian L. Mizer, JAGC, USNR (argued).


For Appellee:  Captain Glen R. Hines, USMC (argued); Colonel
William K. Lietzau, USMC (on brief).


Military Judges:  T.A. Daly and M. H. Sitler


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Fischer, No. 04-0756/MC

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, pursuant to his pleas, of two specifications of indecent acts with a child under the age of sixteen, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). He was sentenced to a bad-conduct discharge, confinement for twelve months, and reduction to pay grade E-1. Pursuant to a pretrial agreement, the convening authority suspended all confinement in excess of 270 days. The United States Navy-Marine Corps Court of Criminal Appeals, sitting en banc, affirmed the findings and sentence. United States v. Fischer, 60 M.J. 650 (N-M. Ct. Crim. App. 2004).

On Appellant's petition, we granted review of the following issue:

> WHETHER APPELLANT WAS SUBJECTED TO ILLEGAL
> PRETRIAL PUNISHMENT AND DENIED DUE PROCESS
> OF LAW WHEN HIS PAY WAS STOPPED WHILE HE WAS
> IN PRETRIAL CONFINEMENT AFTER THE END OF HIS
> OBLIGATED SERVICE.

For the reasons set forth below, we affirm the decision of the Navy-Marine Corps Court of Criminal Appeals.

2

## I. BACKGROUND

### A. PRETRIAL AND TRIAL PROCEEDINGS

Under Appellant's enlistment contract, his period of obligated service ended on June 29, 2001. Eight weeks earlier, on May 4, Appellant was placed in pretrial confinement for various sexual offenses with minor females. In recommending pretrial confinement, Appellant's commander explained that he considered Appellant a flight risk because of his upcoming end of obligated service (EAS) date, June 29.

Appellant was still in pretrial confinement on June 29. Under applicable military pay regulations, discussed infra, the Government terminated his entitlement to military pay and allowances. On July 11, defense counsel notified the Depot Consolidated Administrative Center that Appellant's pay had been stopped. Initially, defense counsel was informed that Appellant's pay would be reinstated. Later, the Government advised defense counsel that Department of Defense (DoD) regulations prohibited reinstatement of Appellant's pay because he had reached his EAS date and was in pretrial confinement.

Appellant was convicted and sentenced on August 9, 2001. Appellant was paid for the period of pretrial confinement before his EAS, but he was not paid for the forty-one days of pretrial confinement that he served after his EAS. On appeal, Appellant argues that the termination of his pay amounted to illegal

3

United States v. Fischer, No. 04-0756/MC

pretrial punishment in violation of Article 13, UCMJ, 10 U.S.C. § 813 (2000).

## B. PAY REGULATIONS

By statute, servicemembers who are on active duty are entitled to the basic pay of the pay grade to which they are assigned.  37 U.S.C. § 204(a)(1); see Bell v. United States, 366 U.S. 393, 401 (1961) (a soldier's entitlement to pay is statutory, not contractual).  The Department of Defense Financial Management Regulations (DoD FMR) provide implementing rules concerning the obligation to pay servicemembers.  See Paalan v. United States, 51 Fed. Cl. 738, 745 (2002).  In the course of determining that Appellant's pay could not be reinstated, the Depot Consolidated Administrative Center relied upon DoD FMR, vol. 7A, ch. 1, subpara. 010302.G.4 (2005),[1] which provides: "If a member is confined awaiting court-martial trial when the enlistment expires, pay and allowances end on the date the enlistment expires.  If the member is acquitted when tried, pay and allowances accrue until discharge."

---

[1] The Depot Consolidated Administrative Center cited DoD FMR, vol. 7A, ch. 3, subpara. 030207.D.  This provision is identical to DoD subpara. 010302.G.4, the only difference being that subpara. 030207 appears in Chapter 3, which is entitled "Special Pays -- Officers Only" as opposed to Chapter 1, which is entitled "Basic Pay."  Though subpara. 030207 was cited by the Depot Consolidated Administrative Center, Appellant's brief refers to subpara. 010302, and the Government's brief refers to subpara. 030207.  For consistency, our discussion will cite to subpara. 010302, but the analysis would be no different for subpara. 030207.

United States v. Fischer, No. 04-0756/MC

The regulation is consistent with decisions of the Comptroller General of the United States,[2] the United States Court of Federal Claims, and the United States Court of Appeals for the Federal Circuit. Well before the enactment of the UCMJ, the Comptroller General determined that a soldier who reached EAS while in pretrial confinement, and who was later convicted, was not entitled to be paid subsequent to the EAS while in pretrial confinement. E.g., Comptroller General McCarl to Maj. E. C. Morton, United States Army, 11 Comp. Gen. 342 (1932). In a 1937 decision, the Comptroller General stated:

> An enlisted man of the Navy held for trial or for sentence by court martial after expiration of enlistment is being held to await the completion of criminal proceedings against him under authority of the Articles for the Government of the Navy. He is no more entitled to pay when so held after expiration of his enlistment than is a civilian who is being held for trial on a criminal offense by the civil authorities, and the fact that the issuance of his discharge is delayed pending the conclusion of the proceedings gives him no right to pay beyond the period for which he contracted to serve. The period of retention for criminal proceedings is no part of the enlistment

---

[2] The Comptroller General is the head of the Government Accountability Office (GAO), formerly known as the General Accounting Office. See GAO Human Capital Reform Act of 2004, Pub. L. No. 108-271, 118 Stat. 811 (2004). The GAO is an independent, nonpartisan agency in the legislative branch that reports to Congress on the activities of executive branch agencies. Frederick M. Kaiser, General Accounting Office and Comptroller General: A Brief Overview, in Major Studies and Issue Briefs of the Congressional Research Service (2000); Frederick C. Mosher, The GAO: The Quest for Accountability in American Government 2-3 (1979). A primary duty of the Comptroller General involves issuance of opinions on behalf of the legislative branch interpreting legislation and determining the legality of financial transactions. See Mosher, supra at 205-06.

> contract and the obligation of the
> Government . . . is to pay him for the
> period for which he contracted to serve, not
> to pay him for any period he may be held on
> criminal charges after expiration of
> enlistment, any more than it would be
> obligated to pay him after his enlistment
> had expired if he were convicted and
> sentenced to imprisonment.

Acting Comptroller General Elliot to the Secretary of the Navy, 17 Comp. Gen. 103 (1937), U.S. Comp. Gen. LEXIS 271, at *6-*7 (1937).

In 1951, shortly before the UCMJ took effect, the Comptroller General ruled that the pre-UCMJ prohibition against pretrial punishment[3] did not require payment of pretrial confinees held beyond their EAS date:

> [T]he said provisions do not require any
> change in the rule that the pay and
> allowances of an enlisted person whose term
> of enlistment expires while he is in
> confinement, awaiting trial by court
> martial, terminate on the date of the
> expiration of his term of enlistment unless
> he is acquitted, in which event pay and
> allowances accrue until he is discharged.

Assistant Comptroller General Yates to the Secretary of the Army, 30 Comp. Gen. 449 (1951), U.S. Comp. Gen. LEXIS 86, at *6 (1951) [hereinafter Yates].

---

[3] "[N]or shall any defendant awaiting trial be made subject to punishment or penalties other than confinement prior to sentence on charges against him." Article of War 16, Manual for Courts-Martial, U.S. Army (MCM) (1949 ed.), App. 1. "[N]or shall any accused who is confined while awaiting trial be made subject to punishments or penalties other than confinement for any offense with which he stands charged prior to execution of an approved sentence on charges against him . . . and they will not forfeit pay or

United States v. Fischer, No. 04-0756/MC

In suits brought by pretrial confinees who reached their EAS while in pretrial confinement against the Government for pay and allowances for the time in pretrial confinement past their EAS, the United States Court of Federal Claims and its predecessor court have followed the reasoning of the Comptroller General's decisions, holding that "[w]hen an enlisted person is in confinement awaiting trial at the time his term of enlistment expires, his pay and allowances terminate on the date his enlistment expires unless he is subsequently acquitted." Moses v. United States, 137 Ct. Cl. 374, 380 (1957); see also Singleton v. United States, 54 Fed. Cl. 689, 692 (2002). But cf. Rhoades v. United States, 229 Ct. Cl. 282 (1982); Dickenson v. United States, 163 Ct. Cl. 512 (1963) (distinguishing the facts and holding that the Comptroller General's rule did not apply under the circumstances of the cases).

According to the United States Court of Appeals for the Federal Circuit, the authority for the military to hold an enlistee in service after EAS without pay pending court-martial unless there is an acquittal constitutes a "settled rule of law." Simoy v. United States, 64 F.App'x 745, 746 (Fed. Cir. 2003); see also Anderson v. United States, 70 F.App'x 572, 575 (Fed. Cir. 2003); Dock v. United States, 46 F.3d 1083 (Fed. Cir. 1995).

---

allowances during the period of confinement except pursuant to sentences

C.  ARTICLE 13

Appellant contends that DoD FMR 010302.G.4, which was the basis for terminating his pay after he reached his EAS while in pretrial confinement, violated the Article 13, UCMJ, right to be free from illegal pretrial punishment.  Article 13 provides: "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him."  We have interpreted Article 13 to prohibit two types of activities: (1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement.  See United States v. Inong, 58 M.J. 460, 463 (C.A.A.F. 2003); United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F. 1997).

Appellant focuses his argument on the illegal pretrial punishment prong of Article 13.  A violation of this prong "entails a purpose or intent to punish an accused before guilt or innocence has been adjudicated."  McCarthy, 47 M.J. at 165. We apply this standard by examining the intent of detention officials or by examining whether the purposes served by the restriction or condition are "reasonably related to a legitimate governmental objective."  United States v. King, 61 M.J. 225,

---

ordered executed."  MCM (1949 ed.), ¶ 19a.

8

227 (C.A.A.F. 2005) (citing Bell v. Wolfish, 441 U.S. 520, 539 (1979); McCarthy, 47 M.J. at 165).

The question of whether Appellant is entitled to credit for an Article 13 violation is reviewed de novo. United States v. Mosby, 56 M.J. 309, 310 (C.A.A.F. 2002). It is a mixed question of law and fact, and the military judge's findings of fact will not be overturned unless they are clearly erroneous. Id. Appellant bears the burden of proof to establish a violation of Article 13. Id.

## II. DISCUSSION

Appellant does not dispute the lower court's finding that neither Appellant's jailors nor his chain of command intended to punish Appellant by stopping his pay. Instead, Appellant asks this Court to find that the termination of Appellant's pay, in accordance with DoD FMR 010302.G.4, amounted to illegal pretrial punishment because it operated as punishment imposed before trial.

## A. REGULATORY PURPOSE

Appellant contends that the implicit purpose of DoD FMR 010302.G.4 is to punish. Appellant interprets DoD FMR 010302.G.4 as denying pay only to those who are guilty, citing the provision that those who are held in pretrial confinement

past their EAS and later acquitted are reimbursed for the time held without pay. The Department of Defense regulations, however, are not so narrow.

A servicemember's pay is not terminated just because the servicemember is placed in pretrial confinement. DoD FMR 010302.F.1 states that pay and allowances accrue to members in military confinement unless: (a) confined by military authorities on behalf of civil authorities; (b) pay and allowances are forfeited by court-martial sentence; or (c) the term of enlistment expires. A servicemember who is confined before trial is entitled to "receive pay until the end of his enlistment contract, regardless of the ultimate disposition of the case." Paalan, 51 Fed. Cl. at 745. If a pretrial confinee does not reach EAS until after the adjudication of the case, the pretrial confinee is entitled to pay and allowances for the time held in pretrial confinement, regardless of whether the individual was found guilty or not guilty.

Moreover, every servicemember's entitlement to pay is terminated at EAS. See Simoy v. United States, 64 F.App'x 745, 747 (Fed. Cir. 2003) ("a service member's entitlement to pay ceases when his enlistment expires"); Matter of: Courts-martial Sentences-Records Lost Before Appellate Review-Appellate Leave Benefits, 1996 U.S. Comp. Gen. LEXIS 442, at *4-*5 (1996) ("It is a well settled rule that no credit for pay and allowances

accrues to a court-martialed enlisted member during periods after the expiration of his term of enlistment . . . ."). Although Appellant characterizes the regulations as "terminat[ing] a serviceman's pay and allowances at the end of his enlistment if the serviceman is in pre-trial confinement," there is no distinction between a servicemember in pretrial confinement and one in any other status.  All servicemembers lose their entitlement to pay and allowances upon expiration of their enlistment contract.

A servicemember may be paid after an enlistment expires in two situations.  First, a servicemember who remains in the service and performs productive work may be paid.  See United States v. Shattuck, 1989 CMR Lexis 187, at *5 (A.F.C.M.R. 1989); DoD FMR 010302.G.1.  Standard confinement duties, however, are not considered active-duty work that would entitle a pretrial confinee held past EAS to payment.  See DoD FMR 010302.G.1; Combs v. United States, 50 Fed. Cl. 592, 594 n.2 (2001); Shattuck, 1989 CMR Lexis 187, at *5.  The second situation is the focus of Appellant's concern.  If a servicemember held in pretrial confinement past EAS is later acquitted, the servicemember is retroactively paid for the time spent in pretrial confinement past the EAS date.  See DoD FMR 010302.G.4. Appellant assumes that because one group of pretrial confinees (the group that is later acquitted) is reimbursed, then the

other group (the group that is later convicted) is being punished. This argument takes too limited a view of the regulations. Acquittal provides a rational, objective basis for reimbursement. The Government's policy of retroactively paying persons held past their EAS when a charge has not been sustained at trial does not signify an intent to punish the other group. In civilian criminal cases, for example, the Government may be liable for reasonable attorney's fees and litigation expenses to a prevailing defendant if the Government position was "vexatious, frivolous, or in bad faith." Hyde Amendment, Pub. L. No. 105-119, tit. VI, § 617, 111 Stat. 2440, 2519 (codified in statutory notes at 18 U.S.C. § 3006A (2000)). Although more limited than the reimbursement provision of DoD FMR 010302.G.4, the Hyde Amendment reflects a policy to compensate specific individuals because of a flaw in their prosecution. It is not a policy designed to punish those who are not compensated. Likewise, we should not assume that the compensatory provisions of the military pay regulations reflect an implicit intent to punish an individual in Appellant's situation.

We note Appellant does not allege that he was held in pretrial confinement without due process. Appellant was placed in pretrial confinement in accordance with Rule for Courts-Martial 305, which contains specific standards and detailed requirements for notice and an opportunity to respond.

12

United States v. Fischer, No. 04-0756/MC

Following the determination that he should be held in pretrial confinement, Appellant's pay was terminated in accordance with a neutral criterion, his EAS.

Appellant does not claim before this Court that the termination of his pay violated the Thirteenth Amendment's prohibition against involuntary servitude or that there is a constitutional right to be paid while in pretrial confinement. In that regard, we note that federal civilian employees may be suspended without pay upon an indictment, regardless of whether there is pretrial confinement. See 5 U.S.C. § 7513(b) (2000). As the Federal Circuit explained:

> [A]n indictment . . . will, as a general rule, provide reasonable cause for an agency to believe that the employee has committed such a crime, and, when the nature of the crime alleged relates to the employee's ability to perform his or her duties, an agency may summarily suspend the employee, without pay, pending the outcome of the criminal proceedings.

Richardson v. United States Customs Serv., 47 F.3d 415, 419 (Fed. Cir. 1995). By contrast, the pay of military personnel is not terminated upon the filing or referral or charges, nor is it terminated upon pretrial confinement. The fact that pay is terminated only when pretrial confinement is combined with a neutral criterion, the expiration of the term of service, underscores the non-punitive nature of the policy. When the Government selects one among many available objective criteria

13

for terminating pay, the fact that other criteria could have been used does not demonstrate that the selected point fails to serve a legitimate Government objective.  Like the indictment date, the EAS date is a rational, objective point for termination of pay, and it is reasonably related to the legitimate Government objective of not paying people who are not performing duties.

## B. REGULATORY EFFECT

Appellant next argues that even if the regulation is not implicitly punitive, the policy is punitive in effect under the factors set out by the Supreme Court in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963).  In Mendoza-Martinez, the Court set forth the following seven factors for use in determining whether an Act of Congress is punitive or regulatory in nature: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation promotes retribution and deterrence -- the traditional aims of punishment; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative

purpose assigned.  372 U.S. at 168-69; see Fischer, 60 M.J. at

656-58 (Villemez, J., dissenting).

Our Court has not previously applied the Mendoza-Martinez

factors in the context of conducting a review under Article 13.

Assuming, without deciding, that the Mendoza-Martinez factors

are applicable to Article 13, these factors do not support a

finding that DoD FMR 010302.G.4 is punitive.

## 1. Affirmative Disability or Restraint

We first take into account whether DoD FMR 010302.G.4

imposes an affirmative disability or restraint.  See Mendoza-

Martinez, 372 U.S. at 168.  DoD FMR 010302.G.4 provides for the

termination of pay for an individual in Appellant's situation.

Although termination of pay at EAS could be viewed as a

disability, it is difficult to characterize this as an

affirmative disability because Appellant, and those in his

position, are not entitled to be paid.  See Yates; Shattuck,

1989 CMR LEXIS 187, at *4-*5.

## 2. Historic Perspective

The next factor considers the historical perspective on the

consequence of the regulation.  Mendoza-Martinez, 372 U.S. at

168.  Appellant points out that "[f]orfeiture of pay has long

been regarded as punishment."  In the present case, there has

been no forfeiture of pay.  Where Appellant was not entitled to

payment, nothing could have been forfeited.

15

Also, while we do not give great weight to negative legislative history, we note that Congress has amended provisions of the UCMJ addressing military pay on several occasions, but has not disturbed the settled interpretation of the relationship between Article 13 and termination of military pay upon EAS.  See, e.g., Military Justice Act of 1983, Pub. L. No. 98-209, 97 Stat. 1393 (1983) (amending Article 57, UCMJ, 10 U.S.C. § 857); National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, tit. XI, 110 Stat. 461-67 (1996) (amending Article 57, establishing Article 58b, 10 U.S.C. § 858b); National Defense Authorization Act for Fiscal Year 1998, Pub. L. No. 105-85, § 581-82, 1073(a)(9)-(11), 111 Stat. 1759, 1900 (1997) (amending Article 58b).

3. Scienter

As previously discussed, the pay of all servicemembers is terminated when they reach EAS.  Consciousness of guilt is not a factor in determining whether to implement the regulation, so the regulation has no role in a finding of scienter.

4. Retribution and Deterrence

The fourth factor considers whether DoD FMR 010302.G.4 promotes the traditional aims of punishment -- retribution and deterrence.  Mendoza-Martinez, 372 U.S. at 168.  Appellant argues that "it is difficult to imagine a better form of retribution and deterrence."  The policy, however, is not aimed

16

at all who are accused of a crime and held in pretrial confinement, but only applies if a neutral event occurs -- the person's EAS date.

5. Application to Criminal Behavior

The fifth factor requires an evaluation as to whether the policy is invoked as a result of behavior that is already a crime. Mendoza-Martinez, 372 U.S. at 168. Appellant argues that this factor is met because the relevant FMR provisions would not have been triggered if there was no probable cause to believe Appellant violated the UCMJ. However, the behavior to which DoD FMR 010302.G applies is reaching the end of an enlistment contract, which is not a crime.

As noted above, a servicemember does not lose entitlement to pay by virtue of being in pretrial confinement. The deciding factor is whether the servicemember has reached EAS, not whether there is probable cause to believe the individual violated the UCMJ. See DoD FMR 010302.G.4.

6. Alternative Purpose

The sixth factor considers whether there is a non-punitive purpose to the regulation. Mendoza-Martinez, 372 U.S. at 168-69. Here, Appellant reiterates his argument that the stated purpose of the FMR is pretext, specifically noting that DoD FMR 010302.G.4 returns pay and allowances to servicemembers in Appellant's position who are subsequently acquitted.

17

However, there is an alternative, non-punitive purpose of DoD FMR 010302.G.4. The alternative purpose is that a servicemember held in pretrial confinement who has passed EAS and who is not providing productive service is not entitled to pay and allowances. As discussed above, EAS is a neutral, non-punitive point in time which is reasonably related to the legitimate governmental interest in terminating the pay of persons who are not performing productive service.

7. Excessiveness

The final factor considers whether the regulation is excessive in relation to the alternative purpose assigned to it. Mendoza-Martinez, 372 U.S. at 169. Appellant argues that the FMR inflicts an excessive toll. We disagree. In civilian life, pretrial confinees may lose their jobs and are often not compensated for the time spent in pretrial confinement. The military's policy to reimburse pretrial confinees who were mistakenly held is more generous than the Hyde Amendment, discussed above, that applies in civilian criminal cases. Although Appellant may undergo personal financial loss because of the policy reflected in the regulations, the termination of pay upon the expiration of the enlistment contract does not signify that the policy is excessive.

## III. CONCLUSION

As Appellant conceded, the brig authorities in this case had no intent to punish Appellant.  The regulation is not implicitly punitive or punitive in effect.  There is a legitimate, non-punitive reason behind the regulation.  The application of the policy was reasonable, given that Appellant reached his EAS and did not perform productive services.  Under an Article 13 claim, we look to whether there was intent to punish or a punitive effect.  If Appellant takes issue with the propriety of the underlying decisions as a matter of fiscal law, he must pursue that issue before the United States Court of Federal Claims.

As a final matter, Appellant also maintains that his Fifth Amendment rights were violated because he was punished by virtue of the application of DoD FMR 010302.G.4 without due process of law.  In view of our conclusion that the regulation has a legitimate non-punitive purpose, there is no punishment at issue in this case.  Moreover, as explained above, there was no forfeiture in this case because Appellant had no entitlement to pay and allowances.

## IV. DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

United States v. Fischer, No. 04-0756/MC

ERDMANN, Judge, with whom GIERKE, Chief Judge, joins
(dissenting):

The majority opinion finds that terminating the pay of
a servicemember in pretrial confinement, whose term of
service has been involuntarily extended by the Government,
does not constitute illegal pretrial punishment under
Article 13, Uniform Code of Military Justice (UCMJ), 10
U.S.C. § 813 (2000). I would hold that the regulation
requiring the termination of pay under those circumstances
is punitive in effect and its application constitutes
illegal pretrial punishment.

Fischer was placed in pretrial confinement on May 4,
2001. His enlistment expired on June 29, 2001. Rather
than discharging him from military service at the end of
his enlistment and thereby losing jurisdiction over him,
the Marine Corps understandably extended his active duty
status pending court-martial.[1] Fischer remained in
confinement and his pay and allowances were terminated.
When Fischer asked for his pay to be reinstated, the

---

[1] Rule for Courts-Martial 202(c)(1) provides that a
servicemember whose enlistment has expired may be "held on
active duty." Marine Corps Manual for Legal Administration
§ 1005 (31 Aug 99), details this involuntary extension of
active duty and requires that proper administrative action
be taken to effectuate the extension. While the record in
this case contains references to the fact that Fischer's
active duty was extended, it contains no references to the
administrative action effectuating the extension.

Government responded that it was prohibited from paying him under Department of Defense (DoD) regulations.

One of the basic guarantees under the Due Process Clause is that a pretrial detainee cannot be punished until there is a finding of guilt. Bell v. Wolfish, 441 U.S. 520, 533 (1979). Article 13 of the UCMJ, which prohibits pretrial punishment, has its roots in this constitutional guarantee. Servicemembers who are accused of crimes can be placed in pretrial confinement to ensure that they will appear at trial and to prevent further misconduct. Rule for Courts-Martial (R.C.M.) 305(h)(2)(B). When placed in pretrial confinement, Article 13 protects them from conditions that constitute punishment, penalty or excess. In this case we are called on to determine whether terminating the pay and allowances of a servicemember, who is in pretrial confinement and whose enlistment has been involuntarily extended, constitutes punishment under Article 13.

The DoD regulation in question, the Department of Defense Financial Management Regulation (DoD FMR), vol. 7A, ch. 1, 010302.G.4 (May 2005),[2] provides:

_____

[2] The May 2005 version of subpara. 010302.G.4 is identical to provisions that were in effect during Fischer's pretrial confinement. See Department of Defense Financial

2

4.  Confined Awaiting Trial by Court-Martial.
    If a member is confined awaiting court-
    martial trial when the enlistment expires,
    pay and allowances end on the date the
    enlistment expires.  If the member is
    acquitted when tried, pay and allowances
    accrue until discharge.

The majority focuses on the fiscal implications of the
regulation and relies, in part, on opinions of the
Comptroller General and Court of Claims.  While these
opinions are interesting both from a fiscal and a
historical perspective, they do not provide any binding
authority for this court as they do not interpret Article
13 or the cases from this court or the U.S. Supreme Court
dealing with illegal pretrial punishment.  Nor do those
opinions consider the "status" based nature of court-
martial jurisdiction under the UCMJ.  It is the primary
duty of this court to provide such interpretations.

I have no quarrel with the majority's finding that a
servicemember's entitlement to pay is terminated when his
or her enlistment expires.  That, however, is simply not
the situation in this case.  One of the mandatory factors
underlying court-martial jurisdiction is that the person to
be tried must be subject to the UCMJ.  In other words, the
person must be in a "status" in which he or she is a

Management Regulation, vol. 7A, ch. 3, 030207.D (Feb.
2000).

"person[] . . . subject to" the UCMJ.  See Article 2(a), UCMJ, 10 U.S.C. § 802(a) (2000).  Article 3(a), UCMJ, 10 U.S.C. § 803(a) (2000), makes it clear that personal jurisdiction is "status based" under the UCMJ:  ". . . a person who is in a status in which the person is subject to this chapter . . . ."  Emphasis added.  Holding Fischer beyond his term of service continued his status as a "servicemember on active duty" through disposition of the charges against him.  R.C.M. 202(c)(1).

As I read the majority opinion, once a servicemember's term of enlistment is involuntarily extended, the obligation to provide pay and allowances is extended as well except in the event that the servicemember is in pretrial confinement.  The result of this view is that the Government can, solely for its own purposes, imprison a presumptively innocent individual, unilaterally continue military status with all its obligations and duties and at the same time take away one of the basic rights associated with active duty military status -- the right to pay.[3]  I cannot join the majority's view that these circumstances do not constitute a violation of Article 13.

---

[3] 37 U.S.C. § 204(a)(1) (2000) provides that members of a uniformed service on active duty are entitled to pay.

United States v. Fischer, No. 04-0756/MC

    As the majority notes, this court has not previously applied the criteria of Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168 (1963), in order to determine whether conditions of pretrial confinement violate Article 13. Were I to apply those factors, I would disagree with the conclusion reached by the majority that the regulation at issue is not punitive in effect. However, I do not believe that such an analysis is necessary. In my view, this court's Article 13 jurisprudence provides a proper framework for determining whether Fischer was subject to unlawful pretrial punishment.

    Article 13 prohibits two types of activity: (1) the intentional imposition of punishment on an accused prior to trial; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial. United States v. Inong, 58 M.J. 460, 463 (C.A.A.F. 2003); United States v. McCarthy, 47 M.J. 162, 165 (C.A.A.F. 1997). The first prong prohibits a purpose or intent to punish, determined by examining the intent of detention officials or by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective. . . ." Bell, 441 U.S. at 539; McCarthy, 47 M.J. at 165. The second prevents unduly

5

rigorous circumstances during pretrial detention.

Conditions that are sufficiently egregious may give rise to

a permissive inference that an accused is being punished,

or the conditions may be so excessive as to constitute

punishment.  Id.; United States v. James, 28 M.J. 214, 216

(C.M.A. 1989).  A determination of whether Fischer is

entitled to relief for unlawful pretrial punishment

involves independent, de novo review.  United States v.

Smith, 53 M.J. 168, 170 (C.A.A.F. 2000); McCarthy, 47 M.J.

at 165; see Thompson v. Keohane, 516 U.S. 99, 113 (1995).

     Fischer's active duty military status was extended in

virtually every respect save one -- he was no longer paid.

The sole reason that his pay was stopped, as opposed to

other servicemembers extended on active duty, was that he

was in pretrial confinement.  Fischer was in pretrial

confinement because both his Commanding Officer and the

Initial Review Officer found that he constituted a flight

risk and a threat to commit serious misconduct.  I find no

reasonable relation to a legitimate government objective

served by terminating an active duty servicemember's pay

and allowances because he or she is in pretrial

confinement.  Since Fischer's pay would not have been

terminated except for the pretrial confinement, its effect

on Fischer is obviously punitive.

United States v. Fischer, No. 04-0756/MC

The regulation's objective, as characterized by the majority, is that servicemembers held in pretrial confinement are not considered to be performing "active duty work" and therefore should not be entitled to pay. This logic breaks down, however, because a servicemember who is later acquitted has performed the same duties while in pretrial confinement and receives compensation. Servicemembers in pretrial confinement are not automatically excused from performing useful duties. Military appellate case law is replete with cases discussing various duties performed by pretrial confinees. See, e.g., United States v. Nelson, 18 C.M.A. 177, 178-79, 39 C.M.R. 177, 178-79 (1969); United States v. Palmiter, 20 M.J. 90, 94 (C.M.A. 1985); United States v. Dvonch, 44 M.J. 531, 533 (A.F. Ct. Crim. App. 1996). Similarly, an active duty servicemember in pretrial confinement who has not been involuntarily extended performs those same duties and receives his or her pay and allowances.

Forfeiting pay traditionally has been regarded as a form of punishment in the military services. See generally United States v. Stebbins, 61 M.J. ___, ___ (11-18) (C.A.A.F. 2005). This regulation imposes a forfeiture upon a servicemember in the absence of any due process or adjudication of guilt. The effect of this action as

7

punishment is illustrated by how the forfeiture is linked to the results of trial.  If a servicemember in Fischer's situation is acquitted, he or she is paid retroactively.[4] But if that person is convicted, there is no pay adjustment.  While the initial termination of pay was based solely on Fischer's pretrial confinement status, the ultimate termination of his pay in this situation is based solely on a finding of guilt.  This is punishment.

The nexus between the permanent termination of pay and a finding of guilt raises an additional concern which I believe further highlights the unlawful nature of this deprivation.  Congress has delegated to the President the authority to establish maximum punishments.  Article 56, UCMJ, 10 U.S.C. § 856 (2000).  Under the Rules for Courts-Martial, the President has directed that the only authorized punishment involving a loss of pay is a forfeiture of pay to be accrued.  See R.C.M. 1003(b)(2) and discussion.  Additionally, execution of any punishment to forfeit pay is effective and executed only after trial.

---

[4] The majority's conclusion that this payment is akin to compensation for the accused when the charge has not been sustained at trial creates a dangerous precedent.  An acquittal in a criminal action does not mean that the Government was wrong in bringing the charges, nor should an acquittal entitle an accused to compensation.  It merely means that the court-martial did not find the accused guilty beyond a reasonable doubt.

United States v. Fischer, No. 04-0756/MC

See Article 57, UCMJ, 10 U.S.C. § 857 (2000).  Tying the deprivation of Fischer's pay to his conviction creates a punishment beyond that authorized by the UCMJ and the Manual for Courts-Martial, United States (2002 ed.).

There is no legitimate governmental objective in DoD FMR 010302.G.4 that outweighs its clear punitive effect, and the regulation therefore constitutes illegal pretrial punishment in violation of Article 13.  I would hold that the regulation is unenforceable and Fischer is entitled to his full pay and allowances for the period in question.  I therefore dissent.